## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **EL CARTEL RECORDS, INC., LOS CANGRIS, INC.,**<br>Plaintiffs,<br><br>v.<br><br>**MIREDDYS GONZÁLEZ-CASTELLANOS, AYEICHA GONZÁLEZ-CASTELLANOS,**<br>Defendants. | **CIVIL NO. 25-cv-1399**<br><br>Nature of Claims: Computer Fraud and Abuse Act-18 U.S.C. § 1030, Injunctive Relief; Stored Communications Act-18 U.S.C. §§ 2701 & 2707, Injunctive Relief<br><br>Jury Trial Demanded |

## COMPLAINT

**Come now** Plaintiffs El Cartel Records, Inc. and Los Cangris, Inc. (collectively "the Plaintiffs") by and through their undersigned counsel, and state as follows:

## INTRODUCTION

1. This case arises from a profound betrayal of trust and a deliberate campaign to undermine a company's integrity from within. Once trusted with safeguarding the future of Plaintiffs, Mireddys González-Castellanos and Ayeicha González-Castellanos (collectively "Defendants")— former insiders with privileged access—abused their position by secretly deleting and withholding essential business records to deliberately cause harm to the Plaintiffs. These actions were not accidental or negligent—they were calculated precisely at the moment when the defendants were about to lose control of the legal entities through ongoing state court litigation, which ensued after they wired $100 million out of the entities. In doing so, Defendants sabotaged core operations by targeting communications related to, among others, Plaintiffs' multi-million-dollar sale of Daddy Yankee's music catalog and Plaintiff El Cartel Records, Inc.'s *La Ultima Vuelta World Tour*, a globally significant farewell tour.

2. Among their most egregious acts was the erasure of content from a critical corporate email account of *mireddys@cartelrecords.com*. Under the guise of protecting personal privacy,

Defendants abused and exploited their access to destroy valuable corporate history, knowing full well that *mireddys@cartelrecords.com* contained key communications that were necessary for Plaintiffs ongoing business, litigation, and regulatory compliance, as well as to wind down their operations, discharge liabilities, and distribute remaining assets in the transition process and beyond.

3.  Forensic analysis has confirmed these deletions, and sworn admissions by Mireddys González-Castellanos establish both access to and knowledge of the nature and importance of the deleted materials.

4.  As a direct consequence and through the acts of the Defendants, the fallout has been immediate and irreparable. Plaintiffs were cut off from vital information and records, including legal correspondence, financial documentation, and operational planning critical to its business continuity and adequate corporate governance. Despite significant efforts to recover the lost data—including outreach to third parties—many communications remain permanently lost. Worse still, these acts occurred in defiance of a Court order, compounding the misconduct and underscoring the retaliatory nature of their actions. In doing so, Defendants violated federal statutes including the Computer Fraud and Abuse Act and the Stored Communications Act.

5.  Plaintiffs now turn to this Court not only to seek damages, but to demand immediate injunctive relief, the return of wrongfully withheld property, and accountability for the deliberate and unlawful destruction of corporate data. Time is of the essence: every day without relief makes further irreparable harm more likely.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over this action under 28 U.S.C. § 1331 because this is an action under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Stored Communications Act,

18 U.S.C. §§ 2701 & 2707.

7.  Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district. The causes of actions alleged in this Complaint arose and accrued in Puerto Rico.

8.  All conditions precedent to the filing of this Complaint, if any, have been performed, have occurred, or have been waived.

## GENERAL ALLEGATIONS

### The Parties

9.  Plaintiff El Cartel Records, Inc. ("El Cartel") was incorporated in Puerto Rico with the specific mission of managing, producing, and distributing Ramón Ayala-Rodríguez, a/k/a Daddy Yankee/Big Boss/DY's ("Ayala-Rodríguez") musical works and related artistic assets. El Cartel was officially formed on December 15, 2003. The registered address of El Cartel was 504 Juan J. Jiménez Street, Parque Central Subdivision, San Juan, PR 00918. Ayala-Rodríguez is a shareholder and the President of El Cartel.

10. Plaintiff Los Cangris, Inc. ("Los Cangris") was incorporated in Puerto Rico with the specific mission of supporting the development of Ayala-Rodríguez's professional career and protecting Ayala-Rodríguez's personal and professional interests. Los Cangris was officially formed on October 24, 2001. The registered address of Los Cangris is Urb. Parque Central, Calle Juan J. Jiménez #504, San Juan, PR 00918. Ayala-Rodríguez is its President and a shareholder.

11. Defendant Mireddys González-Castellanos is a resident of Puerto Rico. Mireddys González-Castellanos's address is Vistamar Marina East, F3-F4 Jaen Street, Carolina, PR 00983. Mireddys González-Castellanos was the former President and a Director of El Cartel and Los Cangris until December 20, 2024. Mireddys González-Castellanos utilized the following email

addresses to conduct Plaintiffs' business: mireddys@cartelrecords.com, mireddys@yahoo.com, and mireddys1@gmail.com. While managing Plaintiffs, Mireddys González-Castellanos appointed her sister—Defendant Ayeicha González-Castellanos—as Plaintiffs' Secretary and Treasurer.

12. Defendant Ayeicha González-Castellanos resides at Vistamar Marina, 1118 Marbella Street, Carolina, PR, 00983. During her tenure, Ayeicha González-Castellanos handled corporate matters for Plaintiffs using the email accounts agonzalez@cartelrecords.com and agc2006@gmail.com. By December 20, 2024, Ayeicha González-Castellanos knew she was no longer an officer of Plaintiffs following Mireddys González-Castellanos's removal.

### Before Taking Charge of El Cartel and Los Cangris

13. Ayala-Rodríguez, a globally recognized artist best known by his nicknames Daddy Yankee, Big Boss, and DY, began his journey into the world of *reggaetón* music at a remarkably young age. His exceptional vocal talent and lyrical ingenuity quickly propelled him into the public eye. In the early 1990s, Ayala-Rodríguez—already known in artistic circles as Daddy Yankee— stood at the forefront of a musical revolution that still reverberates today. He was among the first to popularize and widely use the term *reggaetón*, a word that would soon become synonymous with the explosive new genre of urban Latin music he helped pioneer. With a combination of musical innovation, dynamic stage presence, and cultural influence, Ayala-Rodríguez emerged as one of the most prominent figures in the *reggaetón* movement, earning widespread acclaim in Puerto Rico, the United States, and across the globe. His meteoric rise was fueled not only by his talent as a performer but also by his skill as a gifted composer and creative visionary.

14. Over the years, Ayala-Rodríguez built an extensive portfolio of artistic works—valuable intangible assets he actively developed, commercialized, and protected through savvy

entrepreneurial strategies. As his fame grew, so too did the need to protect his personal and professional interests from outside interference.

15. To safeguard and manage his intellectual property and business ventures, Ayala-Rodríguez established a series of corporate entities—including El Cartel and Los Cangris. From its inception, El Cartel and Los Cangris functioned as business platforms through which Ayala-Rodríguez's artistic career was managed. As both the public face and the primary source of revenue for Plaintiffs, Ayala-Rodríguez has always been its central and indispensable figure.

16. To allow him to focus fully on his artistic endeavors and creative output, Ayala-Rodríguez entrusted the day-to-day management of Plaintiffs' internal affairs to his then-wife, Mireddys González-Castellanos. While managing Plaintiffs, Mireddys González-Castellanos appointed her sister—Ayeicha González-Castellanos—as secretary and treasurer of both corporations.

17. After receiving delegated authority from Ayala-Rodríguez, Mireddys González-Castellanos—together with her sister, Ayeicha González-Castellanos—began to exercise control over Plaintiffs far beyond the scope of what had been authorized. Rather than acting as responsible stewards of the companies, the defendants used their positions to centralize power, disregarding their fiduciary duties and causing substantial harm to the corporations.

18. Their mismanagement was extensive. The defendants failed to keep accurate financial records, ignored essential corporate formalities, and neglected legal obligations. They made questionable financial decisions, mismanaged the company's books, and failed to issue required notices, hold corporate meetings, record critical transactions, or maintain proper corporate minutes, all to the detriment of the Plaintiffs.

## Assuming Leadership of El Cartel and Los Cangris

19. During his extensive career, Ayala-Rodríguez fully dedicated his time to the development

of his artistic career. Over time, Ayala-Rodríguez became increasingly concerned with how the defendants were managing Plaintiffs. After the completion of his farewell tour, *La Ultima Vuelta*, Ayala-Rodríguez began to gradually attempt to assess the state of affairs of his entities. Despite repeated efforts, Ayala-Rodríguez, however, was unable to obtain information about Plaintiff's finances or even his own personal financial position. After nearly eighteen months of stonewalling, Ayala-Rodríguez was left with no choice but to formally demand access to corporate documents. This request was not made lightly. Defendants, however, continued to ignore Ayala-Rodríguez's requests for transparency and accountability.

20. On November 30, 2024, Ayala-Rodríguez invoked his statutory rights under P.R. Laws Ann. tit. 14, § 3650 and sent a formal letter to Mireddys González-Castellanos, demanding access to key documents related to El Cartel and associated entities. In that same letter, Ayala-Rodríguez made it clear that any further financial or business decisions involving El Cartel must be subject to his prior review and authorization.

21. Meanwhile, on December 2, 2024, Ayala-Rodríguez initiated divorce proceedings against Mireddys González-Castellanos, citing an irretrievable breakdown of the marriage.

22. On December 5, 2024, Mireddys González-Castellanos replied to the November 30, 2025 letter. Rather than comply, however, she questioned the legitimacy of Ayala-Rodríguez's request, claiming he lacked a proper purpose for seeking the financial records.

23. At this point, the retaliatory nature of Mireddys González-Castellanos' actions—stemming from the irreconcilable differences that had developed in the personal relationship and failed marriage with Ayala-Rodríguez—was becoming increasingly evident and disruptive to the business and corporate operations.

24. Undeterred, Ayala-Rodríguez followed up with another letter on December 10, 2024,

reiterating his demand for the requested information. In that same communication, Ayala-Rodríguez formally removed Mireddys González-Castellanos from her position as President and Director of El Cartel. That letter went unanswered.

25. Worse yet, the Defendants refused to acknowledge their removal. Rather, they continued to act as though they retained authority within Plaintiffs, taking actions that further compounded the damage.

26. Then, on or about December 11, 2024, Defendant Mireddys González-Castellanos attempted a brazen and unauthorized transfer of $100 million from Plaintiffs' bank accounts into personal accounts separately held by herself and Ayala-Rodríguez.





27. Fortunately, due to swift intervention by Ayala-Rodríguez, the transactions transferring the funds were reversed before the funds were lost.

28. Realizing the need for judicial intervention to regain control and protect the corporation, Ayala-Rodríguez filed for injunctive relief in the Court of the Commonwealth of Puerto Rico. On December 20, 2024, the parties informed the Court that they had reached an agreement: Ayala-Rodríguez would assume control over El Cartel and Los Cangris. The Court acknowledged the agreement on the record that same day, noting its intent to formalize the arrangement in a written judgment. Then, on December 26, 2024, pursuant to the parties' stipulation, the Court issued a final judgment officially transferring control of El Cartel and Los Cangris to Ayala-Rodríguez.

**<u>Defendants Clear the Slate</u>**

29. Regardless of the mutual agreement, once it became clear that Ayala-Rodríguez would regain control of Plaintiffs, Defendants did not accept their removal with grace or accountability. Instead, they launched a calculated campaign of sabotage. Thus, rather than facilitate a smooth transition, they jointly chose to obstruct it—delivering incomplete records in a deliberate act of retaliation and self-preservation.

30. Mireddys González-Castellanos, newly stripped of her managerial authority, responded not with cooperation, but with vengeance and retaliation. She weaponized her insider knowledge to disrupt operations and conceal the very information that Ayala-Rodríguez needed to restore order. Her motives were layered—part resentment over her ousting, part fear of being held accountable—and in complete disregard of her fiduciary duties. The mismanagement that had flourished under her watch was something she had every reason to keep hidden.

31. Her sister, Ayeicha González-Castellanos, shared that same fear. Bound by misplaced loyalty and self-interest, and the utter violation of her fiduciary duties, she joined in withholding critical corporate documents, ensuring that the damage would be deeper and the recovery harder. Ayeicha González-Castellanos's involvement was anything but passive. She, too, had played a role in the negligent handling and corporate mismanagement that had plagued Plaintiffs' affairs, and full transparency posed a personal risk she was unwilling to take.

32. On or about December 29, 2024, both Defendants appeared at the office of Driven PSC ("Driven"), a professional accounting and consulting firm hired to assist Ayala-Rodríguez with the transition of control over the corporate affairs.

33. That day, instead of handing over the companies' complete records, Defendants selectively provided fragments that were carefully curated to conceal more than they revealed.

34. Crucially, they withheld the password to one of Plaintiffs' most important communication tools: the email account known as *mireddys@cartelrecords.com*. Even worse, the Defendants came to an agreement between themselves to delete emails from *mireddys@cartelrecords.com* before providing access to Ayala-Rodríguez.

35. Acting without any legal authority, having been stripped of their positions, and with total disregard of their fiduciary duties, they deleted a sweeping collection of records from

*mireddys@cartelrecords.com*—including all sent emails from the timeframe beginning on July 23, 2020 and ending on December 29, 2024, as well as files named: wire transfers mired gonzalez (folder), INVOICE Y W9 MIREDDYS GONZALEZ 42 WEST AGENCY.pdf, and WIRE TRANSFER INFORMATION MIREDDYS GOZALEZ.pdf (collectively, "the emails and files"). These deletions were carried out before 7:00 pm on December 30, 2024, right before access was granted. Only after the deletions were completed did Defendants finally hand over the *mireddys@cartelrecords.com* password to Driven.

36. It is critical to note that the *mireddys@cartelrecords.com* account was not personal; it was company property. Regardless of the content, the emails and files stored there were corporate records by virtue of residing on a system that Plaintiffs managed. The critical communications to, from and with *mireddys@cartelrecords.com* were all part of the corporate records they were bound to produce as part of the transition.

37. Defendants failed to keep proper records of the matters handled within Plaintiffs. In essence, the corporate file was the emails—and by deleting them, they destroyed critical evidence of the corporation's affairs.

38. By deleting them, Defendants—former officers with no remaining authority—committed a reckless, unauthorized and illegal act. They violated their duty to preserve corporate information, causing the loss of valuable communications and records essential to the integrity of Plaintiffs' business. Consequently, Plaintiffs now face the fallout: they cannot fully trace financial transactions, verify managerial decisions, or reconstruct key moments in their operational history.

39. The deletions were no accident. Mireddys González-Castellanos's decision to erase the Plaintiffs' digital memory came after two seismic events: her removal from El Cartel and Los Cangris and the filing of divorce papers by Ayala-Rodríguez. These were intentional and

retaliatory acts committed in total disregard of her duties arising from the transfer of control agreement reached on December 20, 2024.

40. This was an intentional malicious act, born of revenge and self-preservation. Retaliation was her first and most powerful motive. The timing says it all. Stripped of power and fixated on divorce, Mireddys González-Castellanos lashed out. In her mind, deleting those emails was a form of punishment—her way of sending a message: that she still held the power to inflict damage. It was personal. It was precise. It was revenge—plain and simple; but revenge was not her only objective.

41. Sabotaging Plaintiffs' operations was also part of her overall goal. This was not just emotional—it was strategic. By erasing the communications, she obstructed workflows, disrupted business continuity, and fractured the record-keeping system. She knew exactly what she was doing and where it would hurt. She struck with surgical precision. The aftermath was confusion, delay, and chaos. And it is likely those deleted emails contained financial disclosures she wanted buried—transactions, expenditures, or arrangements she feared would surface. In erasing the emails, she was not merely deleting data—she was concealing relevant and important truth.

42. Finally, this act represented one last desperate grasp for control. Stripped of official power, she found another way to wield influence—through destruction. To her, the data in that account was not just information; it was legacy, control, and leverage. Deleting it was her final assertion of dominance—a closing act in which she, not Ayala-Rodríguez, decided what would survive. Her motives were not hidden—they were transparent in their malice. Her actions were neither clumsy nor accidental—they were deliberate and devastating. This was not just a breach of trust. It was an orchestrated attack on both the business and the truth itself.

43. Ayeicha González-Castellanos did not merely watch from the sidelines. She participated

actively, enabling the deletion of corporate data from the business account. Her involvement was not born of confusion—it was driven by conviction. Her reasons were rooted in unwavering loyalty to her sister, rather than the corporations of which she had been the officer. To her, Mireddys González-Castellanos was not just a business partner—she was family, and family came first. The divorce, in her view, was not a private matter between the two individuals in the marriage. It was a betrayal against them both. Their removal from the companies was not strategy—it was exile. Joining in the data deletion was her way of taking a stand. In her mind, she was defending her sister's honor against an ungrateful husband and employer.

44. Ayeicha González-Castellanos's actions were more than solidarity—it was about manipulation. Together, the sisters sought to control the narrative, to redact history, to shape what others would—and would not—see. It was a calculated rewriting of events, carried out under the guise of loyalty.

45. Ayeicha González-Castellanos's motives were not ambiguous. They were precise and personal. She acted not from confusion or weakness, but from a clear intent to protect her sister, shield herself, and wound Ayala-Rodríguez. This was not a lapse in judgment. It was a coordinated, calculated, and deeply personal act of corporate sabotage.

## Ayala-Rodríguez's Leadership Amid Ruins

46. In or about December 2024, with the assistance of Driven, Ayala-Rodríguez resumed management and operational control of El Cartel and Los Cangris. Upon assuming control, Ayala-Rodríguez immediately discovered that Plaintiffs had been left in a state of profound disarray. Essential financial records were almost entirely absent, and critical documentation related to operations, compliance, and personnel matters was either missing or hopelessly outdated. And, importantly, most of the income of his thirty-year illustrious career was nowhere to be found.

47. The lack of transparency and organizational breakdown severely impeded efforts to evaluate the companies' present standing and formulate a viable path forward. Reconstructing Plaintiffs' financial and operational history proved arduous, requiring extensive efforts due to the evident lapses in record keeping and oversight by the prior management.

48. As part of these recovery efforts, Driven was tasked with conducting a forensic review of the company's email account, *mireddys@cartelrecords.com*. Upon examination of *mireddys@cartelrecords.com*, on or about December 30, 2024, after 7:00 pm, Driven discovered that all sent emails dated between July 23, 2020 and December 29, 2024 had been deleted.



49. On or about January 28, 2024, further forensic review by Driven identified additional deletions: namely, that on December 30, 2024, before 7:00 pm, a series of files had also been erased from the *mireddys@cartelrecords.com* account.



50. Driven contacted Google LLC ("Google") to determine whether recovery was possible. At all relevant times, the *mireddys@cartelrecords.com* email account was hosted through a cloud-based email system provided and maintained by Google. Google confirmed that deleted data was retained for no more than 25 days. Because more than 25 days had passed, Driven could not recover the deleted emails and files.

51. As a direct consequence of these deletions, Plaintiffs are now without a record of its internal management communications and documents from approximately 2020 through 2024. Four years of an information and data vacuum from a corporate management standpoint is, and indeed has been, devastating.

52. Furthermore, this period includes pivotal events, notably in 2021, when Plaintiffs participated in the sale of Daddy Yankee's music catalog and, in 2022, El Cartel played a central role in the world tour known as *La Ultima Vuelta World Tour*.

53. These transactions generated millions of dollars for the companies, yet, due to the deletion

of emails and supporting documentation, Plaintiffs no longer possess records relating to the negotiations, decisions, or execution of the music catalog and the world tour.

54. This loss has created a critical gap in the companies' historical record and significantly impedes their ability to assess, verify, or audit these major corporate events. The lack of documented communications or supporting materials has prevented the companies from producing a complete and accurate accounting of the music catalog and the world tour. Without this documentation, Plaintiffs have been unable to confirm revenues, validate expenses, and trace the distribution of funds.

55. The data void has also hindered internal financial reviews and has raised substantial concerns about corporate oversight and fiduciary responsibility. In an effort to reconstruct the missing history, Plaintiffs have been forced to engage third parties to locate replacement records. These efforts, however, have yielded minimal results and failed to recover essential documentation. The deleted emails and files were precisely the materials required to restore this information and were knowingly deleted by Defendants.

56. On February 6, 2025, Mireddys González-Castellanos, in a written statement under oath, admitted that relevant communications regarding the sale of music catalog resided in the *mireddys@cartelrecords.com* email account. She also affirmed under oath that, as of December 20, 2024, she had formally relinquished control of El Cartel and Los Cangris to Ayala-Rodríguez. Ayeicha González-Castellanos assisted in the preparation of the February 6, 2025 sworn statement.

57. Further, on February 13, 2025, during a televised appearance on the *Lo Sé Todo* program, Mireddys González-Castellanos's authorized representative, Attorney Roberto Alonso, responded to the question, "¿Dice que su representada borraron unos emails, [] eso fue así o no?" ("It is said that your client deleted some emails—is that what happened or not?") with the following: "Estaba

todo mezclado. Este, si te voy a dar algo de mis emails que sea corporativo, saco lo que es mío y te doy lo que es tuyo. Pero eso no es borrar, eso es proteger." ("It was all mixed together—if I'm going to give you something from my emails that's corporate, I take out what's mine and give you what's yours. But that's not deleting, that's protecting."). This statement ("the statement") was made by an individual authorized by Mireddys González-Castellanos to speak on her behalf concerning this matter. As such, the statement constitutes a direct admission of the removal of information from Plaintiffs' corporate email account.

58. While the speaker attempted to reframe the deletion as "protection," such conduct plainly constituted the unauthorized alteration and deletion of corporate records. This conduct carries serious implications for corporate governance and has inflicted substantial harm on Plaintiffs. Simply, Mireddys González-Castellanos acted without any authorization from Plaintiffs to delete or withhold emails. Instead, she unilaterally decided which communications to delete or provide— without oversight or approval.

59. Corporate emails, especially those involving operations or transactions, are company property. Their alteration or deletion cannot be based on a former officer's personal discretion. In any case, by deleting all emails during the span of over four (4) years, it is evident that Defendants did not actually exert any selective criteria as to personal or corporate nature but, rather, they deleted all content without oversight or corporate authority, to cause harm, disrupt operations and conceal the very information that Ayala-Rodríguez needed to restore order, all the while knowing that they contained vital business information.

60. The statement also confirms a critical fact: that Mireddys González-Castellanos had commingled personal and corporate emails. Even where commingling exists, it does not justify unilateral deletion. Their actions irreparably compromised the corporate record. The result is that

key documents—potentially including emails about multimillion-dollar transactions—are missing. This undermines Plaintiffs' ability to reconstruct events, comply with audits, respond to legal claims, or defend its interests. The loss of the emails and files has impaired Plaintiffs' ability to investigate financial history, resolve discrepancies, and satisfy regulatory or legal inquiries.

61. The statement—"that's not deleting, that's protecting"—exemplifies the personal rationalization of behavior that ignored corporate responsibilities. Even if personal information needed safeguarding, the means chosen—widespread deletion from a corporate system—was reckless. The actions of Defendants represent a serious breach of duty and resulted in the unauthorized destruction of company property and measurable harm to El Cartel and Los Cangris.

62. Since January 2025, Plaintiffs have been forced to expend significant resources addressing the fallout from the deletions. These efforts include conducting internal investigations, performing forensic analyses, assessing operational damage, and attempting to recover lost information. Additional expenses have been incurred for legal services, regulatory compliance and, where applicable, payment of penalties and remedial measures. The companies have also devoted substantial time and funds contacting third parties to reconstruct lost data—efforts which, to date, have been largely unsuccessful. These unexpected burdens diverted time, personnel, and capital away from Plaintiffs' core business operations and caused lasting disruption to the company's affairs.

63. As a result of the loss of vital records and the significant damages incurred due to the unauthorized deletion of emails and files, Plaintiffs were left unable to maintain accurate corporate records, respond to ongoing business obligations, or ensure compliance with legal and financial requirements. Faced with these insurmountable challenges and the continued disruption to its operations, Ayala-Rodríguez had no viable option but to dissolve the corporations, bringing an

abrupt and unnecessary end to its business activities.

64. On April 21, 2025, Ayala-Rodríguez formally approved the dissolution of El Cartel in accordance with Article 9.05 of the Puerto Rico General Corporations Act, codified at P.R. Laws Ann. tit. 14, § 3705. The Puerto Rico Department of State officially dissolved El Cartel on April 23, 2025. Under P.R. Laws Ann. tit. 13, § 3798, however, El Cartel retains the legal capacity to initiate or maintain actions in court during the three-year statutory wind-down period following dissolution.

65. Los Cangris has not been formally dissolved; however, a dissolution proceeding is currently pending in state court.

## FIRST CAUSE OF ACTION
### (Conspiracy to Violate Computer Fraud and Abuse Act-18 U.S.C. § 1030)

The allegations in paragraphs 1-65 are incorporated here.

66. At all times relevant to this Complaint, the email account designated as *mireddys@cartelrecords.com* was hosted on a cloud-based email service provided and managed by Google LLC. This cloud-based email service constitutes a "protected computer" under 18 U.S.C. § 1030(e)(2)(B) because it is a "computer" used in and affecting interstate and foreign commerce and communication. Google's email services operate through a globally distributed network of servers and data centers, transmitting, storing, and granting access to electronic communications across state lines and international borders. When users send or receive emails, such data is routed through Google's infrastructure, which spans multiple jurisdictions including various U.S. states and foreign countries. This system enables business correspondence, file exchanges, contract negotiations, and coordination between entities located in different states and countries, facilitating interstate and foreign commerce. As such, Google's email system, including account *mireddys@cartelrecords.com*, is integral to commercial operations that extend beyond

local or state boundaries. The global and interstate nature of this service satisfies the statutory criteria of a "protected computer" under 18 U.S.C. § 1030(e)(2)(B).

67. In or about December 2024, Defendants and others unknown knowingly and willfully conspired to violate 18 U.S.C. § 1030(a)(5)(B), and the associated provisions of § 1030(b) and § 1030(c)(4)(A)(i)(I). Specifically, Defendants agreed to and did intentionally access the *mireddys@cartelrecords.com* email account without authorization for the purpose of deleting emails and files.

68. Following acknowledgment by the Court of the Commonwealth of Puerto Rico on December 20, 2024, that management of Plaintiffs would be transferred to Ayala-Rodríguez, Defendants knowingly provided only partial and incomplete records of Plaintiffs' affairs. By that time, Defendants were fully aware that they no longer possessed any authority to manage, alter, or make decisions regarding El Cartel and Los Cangris, much less destroy corporate information and records.

69. On or about December 29, 2024, Defendants visited the offices of Driven, who had been engaged to assist with the transition of management responsibilities.



During that visit, Defendants intentionally withheld complete information related to Plaintiffs and their operations. Specifically, Defendants failed to disclose or provide the password to the corporate email account *mireddys@cartelrecords.com*, thereby obstructing Plaintiffs' ability to access critical company information.

70. Email account *mireddys@cartelrecords.com* was the master key—it controlled every account under the domain *@carterlrecords.com*. That one password was everything. With it, you could change, add, transfer—do anything. In other words, it was the only password Plaintiffs truly needed, because with it, Plaintiffs could reset them all. And Defendants withheld it.

71. Defendants and others unknown agreed to delete corporate emails from *mireddys@cartelrecords.com* prior to transferring account access to Ayala-Rodríguez. Defendants executed their agreement to delete, without authorization, emails and files from the *mireddys@cartelrecords.com* account before providing access to the account on December 30, 2024.

72. It was further known and agreed among Defendants and others unknown that such unauthorized access and deletion would result in damage to Plaintiffs, each a "person" as defined under 18 U.S.C. § 1030(e)(12) because they are a corporation, having sustained losses in excess of $5,000 during a one-year period, as defined by 18 U.S.C. § 1030(c)(4)(A)(i)(I). These losses were incurred through the disruption of corporate operations, the investigation and remediation of data loss, legal and forensic costs, and the effort required to reconstruct missing records. Defendants' actions violated 18 U.S.C. §§ 1030(a)(5)(B), 1030(b), 1030(c)(4)(A)(i)(I), and 1030(g). As a result of Defendants' unlawful conduct, El Cartel has suffered damages in the mount of $1,000,000 and hereby seeks compensatory damages in that amount, along with any further relief the Court deems just and proper. Likewise, Los Cangris suffered damages in the mount of

$1,000,000 and hereby seeks compensatory damages in that amount, along with any further relief the Court deems just and proper.

### SECOND CAUSE OF ACTION
**(Violation of the Computer Fraud and Abuse Act-18 U.S.C. § 1030)**

The allegations in paragraphs 1-72 are incorporated here.

73. On December 20, 2024, the Court of the Commonwealth of Puerto Rico acknowledged that Defendants would transfer the management of Plaintiffs to Ayala-Rodríguez. As of that date, Defendants were no longer authorized to perform any management activities on behalf of El Cartel and Los Cangris. Nevertheless, on or about day December 29, 2024, Defendants visited the offices of Driven, who had been engaged to facilitate the management transition. During that meeting, Defendants willfully and knowingly provided incomplete information regarding Plaintiffs' operations and systems. Specifically, Defendants failed to turn over the password to the key corporate email account associated with Plaintiffs—namely, email address *mireddys@cartelrecords.com.*

74. At all times relevant to this Complaint, email account *mireddys@cartelrecords.com* was hosted on a cloud-based email service provided and managed by Google LLC and constitutes a "protected computer" under 18 U.S.C. § 1030(e)(2)(B) because it is a "computer" used in and affecting interstate and foreign commerce.

75. Prior to 7:00 pm on December 30, 2024, Defendants intentionally accessed account *mireddys@cartelrecords.com* without authorization and deleted emails and files stored therein. Shortly after the deletions were completed, on or about 7:00 pm, Defendants provided the password to *mireddys@cartelrecords.com* to Driven.

76. Defendants' unauthorized access and deletion of data caused Plaintiffs, each a "person" as defined under 18 U.S.C. § 1030(e)(12) because they are corporations, to suffer an aggregate loss

21

exceeding $5,000 within a one-year period, as defined in 18 U.S.C. § 1030(c)(4)(A)(i)(I). These losses include the cost of investigating the scope and nature of the unauthorized access, assessing the operational and financial damage resulting from the data loss, and attempting to recover or restore deleted records. Plaintiffs also incurred significant expenses in managing disruptions to their operations and contacting third parties in unsuccessful attempts to reconstruct the deleted communications. The incomplete history of Plaintiffs' communications and financial documentation has prevented it from performing a full accounting of the companies' revenue, obligations, and transactional history.

77. Defendants' conduct constitutes a violation of 18 U.S.C. §§ 1030(a)(5)(B), 1030(c)(4)(A)(i)(I), and 1030(g). As a direct and proximate result, El Cartel seeks an award of compensatory damages in the amount of $1,000,000, together with such other relief as the Court deems just and proper. Los Cangris also seeks an award of compensatory damages in the amount of $1,000,000, together with such other relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION
### (Computer Fraud and Abuse Act-18 U.S.C. § 1030-Injunctive Relief)

The allegations in paragraphs 1-77 are incorporated here.

78. Plaintiffs are likely to succeed on the merits because the defendants' actions constitute unauthorized deletion of corporate records. Evidence—including Mireddys González-Castellanos' own authorized statements regarding the deletion of emails from *mireddys@cartelrecords.com*, the forensic analysis of *mireddys@cartelrecords.com*, the defendants' failure to provide complete records, and their refusal to turn over access credentials—strongly support claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Plaintiffs have clearly established that the deleted emails and files were corporate property and that the defendants acted without authorization and proper oversight.

79. Absent preliminary relief, Plaintiffs are likely to suffer irreparable harm. The deleted records include communications and files critical to understanding past transactions and ensuring legal compliance. Their continued absence compromises the companies' ability to settle and close its business, discharge liabilities, and distribute remaining assets. Because many of these records are unique, monetary damages alone cannot make the company whole. Without immediate Court intervention ordering the return of the deleted emails and files, the harm caused by the loss of these materials will continue to deepen.

80. The balance of equities clearly tips in favor of Plaintiffs. The companies seek only to preserve and restore access to business records. The defendants, by contrast, face no legitimate hardship from being required to cooperate in the recovery of corporate data. Their past actions— such as deleting sent emails and withholding passwords—demonstrate bad faith and highlight the necessity of court-ordered relief to prevent further damage.

81. Granting an injunction serves the public interest by reinforcing the importance of corporate accountability, the protection of digital records, and the enforcement of laws governing electronic communications. It ensures that individuals cannot unilaterally destroy or withhold corporate data to the detriment of lawful business operations or ongoing investigations. Upholding the integrity of business practices and the legal system promotes confidence in the rule of law and deters future misconduct by others in similar positions of trust.

82. For these reasons, and pursuant to 18 U.S.C. § 1030(g), Plaintiffs respectfully requests that this Court issue an order compelling Defendants to return or restore to Plaintiffs all emails and files that were deleted or removed from *mireddys@cartelrecords.com*, as well as any other records in Defendants' possession, custody, or control that were deleted or removed from a "protected computer" belonging to Plaintiffs within the meaning of the Computer Fraud and Abuse Act—

including, but not limited to, email accounts, internet-connected computers, servers, and smartphones used for corporate purposes.

## FOURTH CAUSE OF ACTION
### (Violation to the Stored Communications Act-18 U.S.C. §§ 2701 & 2707)

The allegations in paragraphs 1-82 are incorporated here.

83. At all times relevant to this Complaint, email account *mireddys@cartelrecords.com* was hosted as part of a cloud-based email service provided and managed by Google LLC. Google's cloud-based email service is a facility through which "electronic communication service[s]" are provided, as defined by 18 U.S.C. § 2510(15), in that it allows users to send, receive, and store emails, which constitute wire and electronic communications.

84. Prior to 7:00 pm on December 30, 2024, Defendants intentionally accessed email account *mireddys@cartelrecords.com* without authorization, having been stripped of all corporate titles and authority. Defendants also intentionally exceeded any authorization they may have had to access account *mireddys@cartelrecords.com*. In the course of such unauthorized access, Defendants obtained, altered, and prevented access to the contents of wire and electronic communications by deleting emails and files stored in account *mireddys@cartelrecords.com*. The emails and files were deleted while stored in Google's cloud-based service, a facility through which electronic communication services are provided. At the time of deletion, Google maintained copies of the deleted emails and files as part of its standard data retention and backup protocols. Accordingly, the deleted emails and files were in "electronic storage" within the meaning of 18 U.S.C. § 2510(17) because they were stored by an electronic communication service for purposes of backup protection.

85. Defendants' willful and unauthorized conduct caused Plaintiffs, each a "person" per 18 U.S.C. § 2510(6), to incur significant damages, including costs related to investigating the scope

of the deletion, conducting a damage assessment to determine its impact on business operations, and attempting to recover or restore the deleted materials. Plaintiffs also incurred additional costs in managing business disruption, reallocating resources, and reaching out to third parties in unsuccessful efforts to reconstruct the deleted communications.

86. Defendants' conduct constitutes a violation of the Stored Communications Act, 18 U.S.C. §§ 2701 & 2707. As a result of Defendants' violations, El Cartel seeks compensatory damages in the amount of $1,000,000 and punitive damages in the amount of $5,000,000, as authorized by 18 U.S.C. § 2707(c). Los Cangris also seeks compensatory damages in the amount of $1,000,000 and punitive damages in the amount of $5,000,000, as authorized by 18 U.S.C. § 2707(c).

## FIFTH CAUSE OF ACTION
### (Stored Communications Act-18 U.S.C. §§ 2701 & 2707-Injunctive Relief)

The allegations in paragraphs 1-86 are incorporated here.

87. Plaintiffs are likely to succeed on the merits because the defendants' actions constitute the unauthorized deletion and withholding of corporate electronic communications. The evidentiary record—including authorized admissions by Mireddys González-Castellanos acknowledging the deletion of emails from *mireddys@cartelrecords.com*, the forensic analysis of *mireddys@cartelrecords.com*, the defendants' failure to provide complete records, and their refusal to disclose access credentials—strongly supports Plaintiffs' claims under the Stored Communications Act, 18 U.S.C. § 2701. Plaintiffs have clearly established that the deleted emails and files were corporate property stored within a system providing electronic communication services, and that defendants acted without proper authorization or legal oversight.

88. Absent preliminary relief, Plaintiffs are likely to suffer irreparable harm. The deleted records include communications and files critical to understanding past transactions and ensuring regulatory compliance. The continued unavailability of these records materially impairs Plaintiffs'

ability to settle and close its business, discharge liabilities, and distribute remaining assets. Because many of the deleted materials are unique and irretrievable, monetary compensation alone is inadequate to restore Plaintiffs to its original position. Without immediate court intervention compelling the return or restoration of these records, the harm to Plaintiffs will intensify.

89. The balance of equities weighs heavily in favor of Plaintiffs. The companies seek only to recover access to business records to which they are lawfully entitled, and which are necessary for responsible corporate governance. Defendants, by contrast, face no legitimate hardship in being ordered to cooperate in the return or recovery of those records. To the contrary, their prior conduct—including intentional deletions and refusal to provide access—demonstrates bad faith and underscores the necessity of judicial intervention.

90. Granting the requested injunction serves the public interest by promoting corporate accountability, protecting stored electronic communications, and reinforcing compliance with federal data laws. It also ensures that individuals entrusted with corporate information cannot unlawfully destroy or withhold such data to the detriment of legitimate business functions or regulatory processes. Upholding the principles of lawful data stewardship and corporate transparency promotes confidence in judicial remedies and deters future misconduct by those in positions of trust.

91. For these reasons, and pursuant to 18 U.S.C. § 2707(b)(1), Plaintiffs respectfully requests that this Court issue an order compelling Defendants to return or restore all deleted emails and files previously stored in *mireddys@cartelrecords.com*.

**Wherefore**, Plaintiffs demand a trial by jury on all issues triable before a jury and respectfully request that this Honorable Court enter judgment in their favor and against Defendants, and grant the following relief:

a.  An award of compensatory damages in the amount of $1,000,000 for El Cartel;

b.  An award of compensatory damages in the amount of $1,000,000 for Los Cangris;

c.  An award of punitive damages in the amount of $5,000,000 for El Cartel;

d.  An award of punitive damages in the amount of $5,000,000 for Los Cangris;

e.  An order requiring Defendants to return or restore all deleted emails and files previously stored in *mireddys@cartelrecords.com*;

f.  An order requiring Defendants to return or restore any record that was removed or deleted from any "protected computer" belonging to Plaintiffs within the meaning of the Computer Fraud and Abuse Act, including but not limited to email accounts, internet-connected computers, servers, and smartphones used for corporate purposes;

g.  An award of attorneys' fees and costs pursuant to applicable law; and

h.  Such other and further relief as the Court deems just and proper.

**We hereby certify** that on this date, the foregoing was electronically filed with the Clerk of the Court using CM/ECF system, which will send notification of such filing to counsel of record.

**Respectfully submitted** in San Juan, Puerto Rico, this 30th day of July, 2025.

*Attorney for Plaintiffs*



www.CSTLAWPR.com
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433

*s/VÍCTOR O. ACEVEDO-HERNÁNDEZ*
USDC-PR No. 227813
vacevedo@cstlawpr.com

27