IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EL CARTEL RECORDS, INC., et al<br><br>Plaintiff(s)<br><br>vs.<br><br>MIREDDYS GONZALEZ-CASTELLANOS, et al<br><br>Defendant(s) | CIVIL NO. 25-cv-1399<br><br>Computer Fraud and Abuse Act – 18 USC §1030, Injunctive Relief; Stored Communications Act – 18 USC §§ 2701 & 2707, Injunctive Relief |

## DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**NOW COMES** Defendants, Mireddys González-Castellanos ("Mireddys") and Ayeicha González-Castellanos ("Ayeicha"), through the undersigned counsels, and respectfully submit this opposition to the motion for preliminary injunction filed by Plaintiffs [Dkt. 3], to the extent it relies upon alleged violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(5)(B), and the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 & 2707. As set forth below, Plaintiffs' statutory claims fail as a matter of law and cannot support the extraordinary remedy of injunctive relief.

### INTRODUCTION

Plaintiffs have requested injunctive relief under the CFAA and the SCA to order Defendants to recover and restore certain emails and files that were allegedly deleted. This request, however, fails as a matter of law because, among other things, Plaintiffs lack standing and because it is moot. This is so because as expressly alleged by Plaintiffs the very subject of the injunction -allegedly misappropriated or at-risk emails - no longer exists. In other words, Plaintiffs themselves admit that the information they seek to preserve or recover has already been **deleted**, and that there is no known backup or record

of the contents they now ask this Court to order Defendants to produce. In essence, they seek a **remedy for a harm that cannot be undone**, and ask the Court to **enjoin a threat that no longer exists**.

In the alternative that this Court entertains Plaintiffs' request for a preliminary injunction, Plaintiffs also fail to demonstrate that they meet all the requisites to warrant such extraordinary relief under the multi-factor test applicable to such requests.[1]

## THE REQUEST FOR INJUNCTIVE RELIEF IS MOOT

Federal courts are courts of limited jurisdiction, and an Article III case or controversy must exist at all stages of the litigation, including when injunctive relief is sought. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). When "intervening circumstances deprive the plaintiff of a personal stake in the outcome of the lawsuit," the case becomes moot and must be dismissed. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013).

In order for a court to grant injunctive relief, Plaintiff has to meet certain preconditions. The first of which is the doctrine of standing. Plaintiff must establish that he "has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.' " *City of Los Angeles* v. *Lyons*, 461 U.S. 95, 101-02, 103 S.Ct. 1660, 1664-65, 75 L.Ed.2d 675 (1983) (citations omitted)

---

[1] Defendants will also file in due time a *Motion to Dismiss or to Stay the Proceedings* because the complaint (i) fails to state a claim upon which relief can be granted; or (ii) this Honorable Court should abstain from exercising its jurisdiction since a case in which the same facts alleged in this case its being actively litigated before the Puerto Rico Court of First Instance, Carolina Part. In the alternative, pursuant to the same abstention doctrines, this Honorable Court should stay the proceedings in this case while the case before the Puerto Rico Court of First Instance, Carolina Part, in which the same facts alleged in this case are being litigated, concludes.

Courts routinely deny injunctive relief where the complained-of conduct has already occurred and cannot be reversed, particularly where no continuing violation is alleged. *Lopez v. Garriga*, 917 F.2d 63, 67-68 (1st Cir. 1990) (holding that when seeking injunctive relief, a plaintiff must state a "sound basis for equitable relief."); *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 (1983), quoting *O'Shea v. Littleton,* 414 U.S. 488, 499, 94 S.Ct. 669, 677, 38 L.Ed.2d 674 (1974).

One component of this requirement is that an injunction-seeker must show either that some past unlawful conduct has continuing impact into the future, *see K-Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 915 (1st Cir.1989), or else he must show a likelihood of future unlawful conduct on the defendant's part. *See Maine v. United States Dep't of Labor,* 770 F.2d 236, 238 (1st Cir.1985); *Lovell v. Brennan,* 728 F.2d 560, 562 (1st Cir.1984)".

Here, there is no live controversy. Plaintiffs do not claim that Defendant continues to hold, control, or access the deleted data. Nor do they allege that the data still exists in a recoverable form or that Defendants are capable of restoring it. Rather, they ask the Court to issue injunctive relief based on hypothetical fears or past harms—despite acknowledging that the Defendants delivered the password for the account and therefore they are now in control of the email account, and despite acknowledging that the emails and files that they seek have been deleted and permanently lost.

Because Plaintiffs cannot plausibly allege that the emails and files they seek to preserve still exist, and because there is no risk of future unauthorized access or deletion, **there is nothing for the Court to enjoin**. The motion for injunctive relief should be denied for lack of standing and/or mootness, and the claim for injunctive relief dismissed.

## LEGAL FRAMEWORK AND APPLICABLE STANDARD

However, to preserve the rights of Defendants, in the alternative that the Court decides to entertain the injunctive request, Plaintiffs also fail under the standard applicable to such request.

To properly address a request for injunctive relief, courts typically apply a multi-factor test to determine whether injunctive relief is appropriate, the components of which are: 1) the plaintiff's likelihood of success on the merits, 2) the plaintiff would suffer irreparable harm or injury in the absence of injunctive relief, 3) the harm to the plaintiff would outweigh the harm to the defendants from an injunction, and 4) the injunction would not adversely affect the public interest. *Joyce v. Town of Dennis*, 720 F. 3d 12 (1st Cir. 2013); *Asociación de Educación Privada de P.R., Inc. v. García–Padilla*, 490 F.3d 1, 8 (1st Cir.2007).

## DISCUSSION OF THE FACTORS

**Likelihood of success**

The First Circuit has called the first of those factors—the movant's likelihood of success on the merits—"[t]he sine qua non of this four-part inquiry." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002); see *Savino*, 459 F.Supp.3d at ECF No. 175 at 11-12 (noting that the first two factors are the most important ones, and that they interact with one another, such that a greater likelihood of success on the merits allows for a lesser showing of irreparable harm, and vice versa). Failure to establish the primary factor of likelihood of success renders "the remaining factors ... matters of idle curiosity." *New Comm Wireless Servs.,* 287 F.3d at 9; *Baez v. Moniz*, 460 F. Supp. 3d 78, 88 (D. Mass. 2020).

### A. The CFAA claim fails under the Supreme Court's standard adopted in *Van Buren v. United States*, 593 U.S. 374 (2021)

The CFAA dates from 1986 as a response from Congress to rising computer related criminal activity. Almost everyone agrees that it was intended toward (i) so-called hackers, whether external or internal to a system, meaning those who "acces[s] a computer without any permission at all", *LVRC Holdings LLC* v. *Brekka*, 581 F. 3d 1127, 1133 (CA9 2009); see also *Pulte Homes, Inc.* v. *Laborers' Int'l Union of North Am.*, 648 F. 3d 295, 304 (CA6 2011), and (ii) those who access a computer with permission, but then "'exceed' the parameters of authorized access by entering an area of the computer to which [that] authorization does not extend." *United States* v. *Valle*, 807 F. 3d 508, 524 (CA2 2015). See also *Van Buren v. United States*, 593 U.S. 374, 389-390 (2021).

Therefore, The CFAA was enacted to prevent intentional intrusion onto someone else's computer—specifically, computer hacking. See *United States v. Nosal (Nosal I)*, 676 F.3d 854, 858 (9th Cir. 2012) (citing S. Rep. No. 99-432, at 9 (1986) (Conf. Rep.)).

Plaintiffs invoke Section 1030(a)(5)(B) of the CFAA which subjects to criminal liability anyone who "intentionally accesses a protected computer **without authorization**, and as a result of such conduct, recklessly causes damage". (Emphasis supplied). Importantly, all seven (7) provisions of the CFAA include the "**without authorization**" element, including § 1030(a)(2).

But Plaintiffs allege and acknowledge in the Complaint that the email account at issue here, mireddys@cartelrecords.com, was historically accessed and used by Mireddys in her capacity as President and Director of the named entities. Plaintiffs **do not allege that any of the Defendants bypassed technical safeguards, stole credentials, or engaged in any hacking into someone else's account or computer**. Rather, Plaintiffs complain that

Defendants, before handing over the password, deleted some emails from an account to which they always had access.

This poses a contradiction to their argument because, either Defendants did not have authorization or had it, but it cannot be both. Plaintiffs admit that Defendants had a password when they allegedly deleted some email messages, furthermore the email account has indeed Mireddys name (mireddys@cartelrecords.com). Therefore, she simply **had authorization to access her account**. It is entirely irrelevant and outside of the scope of the CFAA what use or improper purpose Defendants might have had regarding the email messages that she could access just like she always had done, up to that point in time. Whether her actions regarding the use of the email messages, including deletion, constitute a breach of an alleged fiduciary corporate duty is outside the realm of the CFAA or federal jurisdiction as we discuss below.

In *Van Buren v. United States*, 593 U.S. 374 (2021), the Supreme Court clarified the meaning of "exceeds authorized access" but, by necessary implication, also the "without authorization" clause under the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030. While *Van Buren* addressed § 1030(a)(2), the Court's reasoning applies equally to all the CFAA provisions that use the same terminology, including § 1030(a)(5)(B) invoked by Plaintiffs here.

The *Van Buren* decision adopts the view of Van Buren in making sense of the statutory framework of the CFAA treating the "without authorization" and "exceeds authorized access" clauses consistently. This leads to the so-called gates-up-or-down approach that is widely discussed and adopted by the majority in the *Van Buren* decision. Under this reading, liability under both clauses ("without authorization" and "exceeds

authorized access") stems from a gates-up-or-down inquiry - one either can or cannot access a computer system, and one either can or cannot access certain areas within the system -. *Van Buren* at 390.

**The facts alleged by Plaintiffs in the *Complaint*, taken as true for the consideration of this opposition, demonstrate that both Defendants, as officials or directors of the named entities, could access the email accounts and had the password to do it. Defendants did not have to bypass technical safeguards, steal a password or engage in any form of hacking to gain access to the email accounts. Therefore, they were authorized to access the system under the CFAA's definition of "authorized access".**

Perhaps to avoid having to admit that Defendants had authorization to the email accounts, within the meaning of the CFAA, Plaintiffs' allegations align more with the reasoning behind *International Airport Centers, L.L.C. v. Citrin*, 440 F.3d 418 (7th Cir. 2006), holding that once an employee acts disloyally or outside their fiduciary role, their access becomes unauthorized, even if credentials remain valid; and with *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 583–84 (1st Cir. 2001), holding that violations of a confidentiality agreement or other contractual restraints could give rise to a claim for unauthorized access under the CFAA.

However, the reasoning behind both decisions was also rejected by the *Van Buren* decision which held that the CFAA does not criminalize misuse of authorized access, even when it violates company policy, contracts, or fiduciary duties. Instead, "without authorization" or "exceeds authorized access" must refer to technical restrictions, **not** subjective purposes or purpose-based limitations. See *Van Buren* at 396 and *hiQ Labs, Inc.*

*v. LinkedIn Corporation*, 31 F.4th 1180 (9th Cir. 2022) (Post *Van Buren* decision holding that the Supreme Court had approved of *Nosal I*, supra, and abrogated *EF Cultural Travel and Rodriguez*. *Van Buren v. United States* 141 S. Ct. at 1653–54 & n.2; also holding "For all these reasons, it appears that the CFAA's prohibition on accessing a computer "without authorization" is violated when a person circumvents a computer's generally applicable rules regarding access permissions, such as username and password requirements, to gain access to a computer." at 1201).

Plaintiffs go to great lengths to somehow conflate that (1) Defendants had been "removed" from their managerial positions and that there was a Puerto Rico Court judgement that had adopted an **agreement** between Mireddys and Ramón Ayala-Rodríguez transferring the "control" of the companies to Ayala-Rodríguez with (2) the technical aspects of access to a computer that would render such access as "without authorization". The "without authorization" clause under the CFAA only refers to the latter. Simply put, pursuant to *Van Buren* the removal of a managerial role is not the same as the technical safeguards or credentials of an email account.

Nowhere in their pleadings Plaintiffs allege that a judicial order exists specifically regarding the email account at issue, nor its credentials, nor a revoking of technical credentials, nor a prohibition to delete files from the account that belonged to any of the Defendants. But even if there was anything like that, Plaintiffs still would have to **allege that Defendants bypassed technical safeguards, stole credentials, or engaged in any hacking** in order for there to be a violation under the CFAA.

Rather, what Plaintiffs allegations sound like is more a breach of a fiduciary duty limited to the corporate context which has been rejected consistently by federal courts to

constitute a violation under the CFAA. Under *Van Buren*, the CFAA does not prohibit this conduct. The statute does not convert internal corporate disputes or misuse of permitted access into federal computer crimes. The CFAA is a hacking statute, not a catch-all for digital mismanagement.

The Supreme Court in *Van Buren* points to the structural problem that the Government had in that case arguing that the CFAA gave rise to civil liability under § 1030(g), with the statute defining "damage" and "loss" to specify what a plaintiff can recover. Plaintiffs here allege to have suffered damages and, therefore, they have the same problem pinpointed by the Supreme Court in *Van Buren*, namely that "[b]oth terms focus on technological harms to computer data or systems [and] [s]uch provisions make sense in a scheme aimed at avoiding the ordinary consequences of hacking but are **ill fitted to remediating 'misuse' of sensitive information that employees permissibly access using their computers.**" (Emphasis supplied).

Plaintiffs' allegations of unauthorized conduct by Defendants might rest, at bottom, on claims of **breach of fiduciary duty**, **mismanagement, and failure to properly turn over corporate records,** all matters that, by Plaintiffs' own admission, are the subject of ongoing proceedings in the courts of Puerto Rico.[2] Indeed, Plaintiffs acknowledge that Defendants were removed from their managerial positions through a **state court judgment** entered on December 26, 2024, following a petition for injunctive relief and corporate control. Plaintiffs then filed another case alleging that Defendants violated fiduciary duties while acting as director and officials of the named entities, including allegations similar to

---

[2] This issue will be further discussed in the *Motion to Dismiss or to Stay the Proceedings* that will be filed, arguing that this Honorable Court should not exercised its jurisdiction pursuant to the abstention doctrines.

the pleading of this case. Consequently, the instant action encompasses the same factual nucleus that is being litigated before the Puerto Rico Court of First Instance.

Yet, rather than allow that local forum to adjudicate the fiduciary and corporate governance claims within its jurisdiction, Plaintiffs now ask this Court to entertain a parallel theory of liability under federal statutes - the CFAA and SCA - by recharacterizing a business dispute as "unauthorized access" to a protected computer and unlawful deletion of stored communications. All this surrounded by the divorce proceedings between two public figures. Consequently, the filing of this case is the last maneuver implemented by Ramón Ayala Rodríguez to pressure Mireddys, using this Court as a **secondary venue to obtain leverage or duplicative relief**.

If Plaintiffs contend that Defendants violated their duties as director or officers of the named entities, or improperly handled corporate property during a transition, those allegations are already before the consideration of the Puerto Rico Court of First Instance, a forum that is equipped to assess the scope and consequences of any managerial misconduct. This Court should not permit Plaintiffs to transform a localized fiduciary conflict into a federal "hacking" claim based on conclusory allegations that Defendants' access - always authorized - became criminal by operation of corporate disagreement.

Accordingly, Plaintiffs cannot demonstrate a likelihood of success on their CFAA claim.

**B. Plaintiffs cannot establish a violation of the Stored Communications Act**

Plaintiffs also allege that Defendants violated the Stored Communications Act (SCA), 18 U.S.C. § 2701 *et seq.*, by deleting emails from the Gmail account allegedly used to manage company business. This claim also fails as a matter of law.

The SCA protects only electronic communications that are in "electronic storage," defined narrowly in 18 U.S.C. § 2510(17) to mean:

> (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
>
> (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

**Courts have consistently held that emails that have already been accessed by the recipient do not fall within this definition**. See *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 114 (3d Cir. 2003), holding that emails that have been accessed by recipient are not in intermediate storage incidental to transmission, but on post-transmission storage. See also *U.S. v. Weaver,* 636 F.Supp.2d 769, 771 (C.D. Ill. 2009); *Hilderman v. Enea TekSci, Inc.* 551 F.Supp.2d 1183, 1205 (S.D.Cal.2008), holding that "courts have construed subsection (A) as applying to e-mail messages stored on an ISP's server pending delivery to the recipient, but not e-mail messages remaining on an ISP's server after delivery."

Here, Plaintiffs admit that Defendants were the regular users of the email accounts in question and with knowledge of the password. The emails were not in transmission or being stored incidentally, because they had already been received and read. Thus, they were **not** in "electronic storage" within the definition of the term under the SCA.

The second prong of the definition requires that the storage be "for purposes of backup protection." Plaintiffs make no allegation - and offer no evidence - that the Google email service functioned as a backup system for previously sent or stored communications. Courts interpret this provision narrowly and exclude standard inbox storage from its scope. See *Jennings v. Jennings*, 736 S.E.2d 242, 245 (S.C. 2012), holding that e-mails which an

intended recipient has opened may, when not deleted, be 'stored' in common parlance; but in light of the restriction of 'storage' in § 2510(17)(B) of solely for 'backup protection', **e-mails which the intended recipient has opened, but not deleted, and thus which remain available for later re-opening, are not being kept 'for the purposes of backup protection'**.

Plaintiffs also fail to allege any unauthorized technical access. The SCA prohibits accessing a facility that provides electronic communication services without authorization. But it does not prohibit a user from accessing their own account. The SCA exempts, *inter alia*, conduct "authorized ... by the person or entity providing a wire or electronic communications service," *id.* § 2701(c)(1), or "by a user of that service with respect to a communication of or intended for that user". *id.* § 2701(c)(2).

Here, Defendants had valid access credentials to the email accounts. **Plaintiffs' allegations concern the use of an account to which Defendants had access. This case is not about unauthorized intrusion**. **The SCA simply does not apply to this scenario**.

For the foregoing reasons, Plaintiffs have failed to show a likelihood of success on the merits of their statutory claims under the CFAA or the SCA. The facts alleged do not involve unauthorized access or hacking, but rather an internal corporate dispute involving allegedly improper deletions from an account to which Defendants had routine access. Therefore, the extraordinary remedy of preliminary injunctive relief is unwarranted in this case.

**Irreparable Harm**

"To be entitled to a forward-looking remedy, a plaintiff must satisfy the basic requisites of equitable relief - 'the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law.' " *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 16 (1st Cir.2004) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)); see also *Lopez v. Garriga*, 917 F.2d 63, 67 (1st Cir.1990) (noting that "an injunction-seeker must show either that some past unlawful conduct has continuing impact into the future, or else he must show a likelihood of future unlawful conduct on the defendant's part" (citation omitted)).

The First Circuit has also held that '[i]rreparable injury in the preliminary injunction context means an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy.' *Rio Grande Community Health Center Inc. v. Rullan*, 397 F.3d 56 (1st Cir.2005). 'The irreparable harm must be 'neither remote nor speculative, but actual and imminent.' *In re Dunes Hotel Associates,* 1997 WL 33344279, *4 (Bankr.D.S.C.1997), citing *Dan River Inc. v. Icahn*, 701 F.2d 278 (4th Cir.1983). 'Mere injuries, however substantial, in terms of **money, time, and energy** necessarily expended in the absence of a stay, are not enough.' *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir.1987)."

If the plaintiff suffers a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel. *Id.* For example, harm to goodwill, like harm to reputation, is the type of harm not readily measurable of fully compensable in money damages and for that reason, more likely to be found "irreparable." *K–Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 915 (1st

Cir.1989). Other examples of irreparable harm include certain constitutional violations like "infringements of free speech, association, privacy or other rights as to which temporary deprivation is viewed of such qualitative importance as to be irremediable by any subsequent relief." *Pub. Serv. Co. of New Hampshire v. West Newbury,* 835 F.2d 380, 382 (1st Cir.1987). Also, it has long been held that traditional economic damages can be remedied by compensatory awards and thus do not rise to the level of being irreparable. *Puerto Rico Hosp. Supply, Inc. v. Boston Scientific Corp.*, 426 F.3d 503, 507 (1st Cir.2005).

It should be noted that, despite the Plaintiffs' insistence on bringing this case before this Court under the CFAA and the SCA, in essence their claim is one of alleged failures of corporate governance supposedly displayed by the Defendants. Any potential fallout if that contention is proven true, garners proper permanent remedy under the provisions of local Puerto Rico corporate law, contract law and tort law.

The Plaintiffs insist that they face operational, management, compliance and other business administration difficulties because of the alleged loss of information contained in the e-mails and digital attachments they wish to recover. Assuming these impediments are a natural or reasonably expected consequence of the deletion of the described electronic communications, which we adamantly deny, the most they translate into is monetary loss, which is determinable and measurable, therefore adequately compensable on the merits of their claims. Not only is injunctive relief unwarranted, but damages is a remedy that should not be granted here, but rather in the local cases. We also highlight that the Plaintiffs make a timid attempt at identifying the nature of the supposed deleted communications, and therefore cannot directly identify what documents, information or records were actually kept in the mentioned e-mail account. Consequently, Plaintiffs cannot directly link that

information to the alleged detrimental effects their absence has on the corporations or their future stability or existence. This makes their supposed harm purely speculative, and as such denial of injunctive relief must attach.

**Balance of Hardship**

The balance of hardships requires courts to assess whether the injury to the party seeking the injunction outweighs any harm that granting the injunction might cause to the opposing party. This factor ensures that the relief granted does not impose disproportionate harm on the respondent compared to the benefit it provides to the movant. *Innovation Marketing v. Tuffcare Inc.,* 31 F.Supp.2d 218 (D.P.R. 1998).

The Plaintiffs' request is that the Defendants be ordered to "return or restore to Plaintiffs all e-mails and files that they deleted or removed from mirredys@cartelreocrds.com, and that Defendant return or restore to Plaintiffs all records in Defendant's possession, custody, or control that were deleted or removed from a 'protected computer'…". The Plaintiffs entreat the Court to see the remedy requested as a mere act of cooperation, but in reality, that is not the extent of their ask.

If the Plaintiffs do not secure the injunctive remedy sought here, they are in no substantially different position than they were coming into this matter. They claim to not have access to vital corporate information that would allow them to continue business as usual, and/ or would allow them to ensure some sort of economic stability and compliance until they can shore up their endeavors and possibly cease operations. That would remain Plaintiff's circumstance should the Court grant the injunction relief, because Defendants no longer has access to the corporations' records, computers, or email accounts, since total control has been tendered to Ayala-Rodríguez. In other words, pursuant to the allegations

includedn the Complaint, **Defendants can take no further action that would be to the detriment of the companies, nor can they make things worse or return or restore emails that were already deleted**. Consequently, injunctive relief is totally unnecessary and unwarranted.

On the other hand, granting the injunctive remedy requested would come at great harm and expense for the Defendants, that would ultimately be to no avail to the Plaintiffs. Mireddys is currently facing a total of four (4) Commonwealth legal actions filed against her by Ayala Rodríguez and/or Plaintiffs, including stalled divorce proceedings, a protracted community asset liquidation case, corporate governance violation actions. Now the Plaintiffs wish to pile on an order for the Defendants, who no longer has access to any electronic accounts, any corporate records or files or any other corporate information, nor has the technical knowledge on how to even begin to face that endeavor, to be obligated to somehow restore, rebuild, reestablish, and/or recover four years of electronic data, that Plaintiffs acknowledge was deleted and that Plaintiffs have not identified by describing its contents or relevance. It should be noted that Plaintiffs acknowledged in the Complaint that they made an attempt at retrieving the information from the Google database, to no avail.

Moreover, we insist on the lack of plausibility of the notion that such crucial and sensitive information related to the Plaintiffs' corporate and economic affairs were kept exclusively in this Google cloud-based e-mail account. The Plaintiffs describe banking information, tax information, contracts information, earnings, payments and information on two important events, *i.e.* the sale of the music catalog and the World Tour, among others. And they insist that the only location of this information, then and now, is in those

e-mail communications. Reason dictates that such information should be available in other places such as with accountants, vendors, the remitters of the subject e-mails, banks or a number of other sources with whom this information would have been shared, produced or transmitted. Having control of the corporate affairs, it stands to reason that the Plaintiffs and their current principal at the helm, Ayala-Rodríguez, would certainly be in an ideal position to retrieve the information. The alternative is to oblige the Defendant to incur in what would certainly be a monumental task with an enormous price tag attached.

These considerations should tilt the balance in favor of the Defendants, and injunctive remedy should be denied.

### Public Interest

The final consideration is the effect of an injunction on the public interest. In this context, the Plaintiffs fashion themselves as the beacons of corporate governance and preservers of the rule of law for the public at large, because of course the remedy they seek is for the good of all.

This case is not in the same vein as the matter of *Asociacion de Educacion Privada de Puerto Rico, Inc. v. Garcia-Padilla*, 490 F.3d 1, 21 (1st Cir. 2007), where the movants sought parents' involvement in the textbook selection process of private schools, nor is it in the same vein as *Vaquería Tres Monjitas, Inc., v., Irizarry,* 587 F.3d 464 (1st Cir., 2009), where the movants sought to pause unfair pricing practices in the milk industry that threatened a broad number of plants with closure and effectively brought the industry close to being monopolized.

The acts imputed on the Defendants, if proven true, do not stretch as far as the Plaintiffs suggest, nor do the purported corrective measure the Plaintiffs ask the court to

impose. The Plaintiffs just want to make a public example out of the Defendants. While the Plaintiffs argue a broad reaching effect if the Defendants' imputed wrongdoings go unchecked, the proposed limited injunctive relief does not serve to dispel that alleged result, thus the remedy proves pointless; it serves no public interest.

For the reasons stated above, the preliminary injunction should be denied without further consideration.[3]

**WHEREFORE**, the preliminary injunction should be denied without further consideration.

In Guaynabo, Puerto Rico, this 8th day of August 2024.

**COUNSELS FOR MIREDDYS**:

| **Marichal Hernández LLC**<br>1510 F.D Roosevelt Avenue, Fl. 9<br>Guaynabo, PR, 00968-2620<br>PO Box 190095<br>San Juan, PR 00919-0095<br>Tel. 787.753.1565<br>Fax. 787.763.1704<br><br>/s/**Rafael Santiago-Rosa**<br>USDC NO.: 211705<br>rsantiago@mhlex.com<br><br>/s/**José R. Negrón-Fernández**<br>José R. Negrón-Fernández<br>USDC P.R. NO. 212713<br><br>/s/**Miguel A. Rangel-Rosas**<br>USDC NO.: 218601<br>mrangel@mhlex.com | **Pedro J. Rivera Rivera, Law Office**<br>**USDC # 228702**<br>Edificio Triple S Plaza<br>1510 Ave. FD Roosevelt<br>Ste 9B-1<br>Guaynabo, PR 00968<br><br>Mobile 787-599-3702<br>E-mail: pjrivera@pjrlex.com<br><br>*S/Pedro J. Rivera-Rivera*<br>**PEDRO J. RIVERA RIVERA** |

---

[3] In the *Motion to Dismiss or to Stay the Proceedings* Defendants will discuss the reasons why the case should be dismissed without further consideration.

**COUNSEL FOR AYEICHA**:

**ALBERTO RIVERA-RAMOS, ESQ.**
*Attorney for* Ayeicha González-Castellanos
3001 Ave. Isla Verde
Plaza del Mar, Apt. 305
Carolina, PR 00979
Tel. (787) 239-7988
Email: rivalberto@gmail.com


By: s/*Alberto Rivera-Ramos*
USDC PR No. 227502