## IN THE UNITED STATES DISTRIC COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EL CARTEL RECORDS, INC., et al | |
| Plaintiff(s) | CIVIL NO. 25-cv-1399 |
| vs. | Computer Fraud and Abuse Act – 18 USC §1030, Injunctive Relief; Stored Communications Act – 18 USC §§ 2701 & 2707, Injunctive Relief |
| MIREDDYS GONZALEZ-CASTELLANOS, et al | |
| Defendant(s) | |

## MOTION TO DISMISS OR TO STAY PROCEEDINGS

**TO THE HONORABLE COURT:**

    **NOW COMES** Defendants, Mireddys González-Castellanos ("Mireddys") and Ayeicha González-Castellanos ("Ayeicha"), through the undersigned attorneys, who respectfully states and prays:

### Introduction

    In this *Motion to Dismiss or to Stay Proceedings*, Defendants posit that this case must be dismissed inasmuch the same fails to state a claim upon which relief can be granted under the Computer Fraud and Abuse Act ("CFAA") and/or the Stored Communications Act ("SCA").

    In the alternative, the Defendant most respectfully aver that this Honorable Court has to abstain from exercising jurisdiction due to the fact that Plaintiffs are already prosecuting a breach of loyalty and fiduciary duties case against the Defendants before the Puerto Rico Court of First Instance, Carolina Part, **under identical facts to the ones object of the above-captioned case**.

    Finally, even if not persuaded by the above-described arguments, pursuant to the same abstention principles, this Honorable Court should, at the very least, stay the above-captioned proceedings until the case before the Puerto Rico Court of First Instance, Carolina Part, concludes.

1

## Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss before pleading for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Faced with a motion to dismiss on this ground, the Court accepts as true the well pleaded facts in the complaint, draws all reasonable inferences in plaintiff's favor, and see if they plausibly narrate a claim for relief. *Lyman* v. *Baker*, 954 F.3d 351, 360 (1st Cir. 2020).

The Court must "ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Id*., quoting *Shatz* v. *Republican State Leadership Comm*., 9 F.3d 50, 55 (1st Cir. 2012). In other words, the Court "credit[s] neither conclusory legal allegations nor factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *Legal Sea Foods, LLC* v. *Strathmore Ins. Co*., 36 F.4th 29, 33-34 (1st Cir. 2022).

"Our federal pleading standard 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. And, importantly, 'assertions nominally cast in factual terms but so general and conclusory as to amount merely to an assertion that unspecified facts exist to conform to the legal blueprint' are insufficient to state a cognizable claim." *Lavigne* v. *Great Salt Bay Community School Board*, __ F.4th __ (1st Cir. July 28th, 2025) 2025 WL 2103993 *4.

"To survive a motion to dismiss, a complaint mut contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability

requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft* v. *Iqbal*, 556 US 662, 678 (2009). In other words:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.*, at 679.

The First Circuit has reasoned that " [p]lausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels [the Court] 'to draw on' [its] 'judicial experience and common sense'." *Lyman* v. *Baker*, supra, at 360.

Finally, when reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the Court can consider "(a) implications from documents attached to or fairly incorporated into the complaint, (b) facts susceptible to judicial notice, and (c) concessions in [the] plaintiff's response to the motion to dismiss". *Id.*, at 360.

### Well-Pleaded Facts included in the Complaint accepted as true for this Motion to Dismiss

The well-pleaded facts that are accepted as true and are relevant for the evaluation of this *Motion to Dismiss* are:

i.   Plaintiff El Cartel Records, Inc. ("El Cartel") was incorporated in Puerto Rico with the specific mission of managing, producing, and distributing Ramón Ayala-Rodríguez, a/k/a Daddy Yankee/Big Boss/DY's ("Ayala-Rodríguez") musical works and related artistic assets. *¶9 of the Complaint at Dkt. No. 1.*

ii.  El Cartel was officially formed on December 15, 2003. *¶9 of the Complaint at Dkt. No. 1.*

iii.    Plaintiff Los Cangris, Inc. ("Los Cangris") was incorporated in Puerto Rico with the specific mission of supporting the development of Ayala-Rodríguez's professional career and protecting Ayala-Rodríguez's personal and professional interests.  *¶10 of the Complaint at Dkt. No. 1.*

iv.    Los Cangris was officially formed on October 24, 2001. *¶10 of the Complaint at Dkt. No. 1.*

v.    To allow him to focus on his artistic endeavors and creative output, Ayala-Rodríguez entrusted the day-to-day management of Plaintiffs' internal affairs to his then-wife, Mireddys.  *¶16 of the Complaint at Dkt. No. 1.*

vi.    Mireddys was President and a Director of El Cartel and Los Cangris.  *¶11 of the Complaint at Dkt. No. 1.*

vii.    Mireddys utilized the following email addresses to conduct Plaintiff's business: mireddys@cartelrecords.com, mireddys@yahoo.com, and mireddys1@gmail.com. *¶11 of the Complaint at Dkt. No. 1.*

viii.    While managing Plaintiffs, Mireddys appointed Ayeicha as Plaintiff's Secretary and Treasurer.  *¶11 and 16 of the Complaint at Dkt. No. 1.*

ix.    On December 2, 2024, Ayala-Rodríguez initiated divorce proceedings against Mireddys, citing an irretrievable breakdown of the marriage. *¶21 of the Complaint at Dkt. No. 1.* This Honorable Court can take judicial notice that the divorce proceedings referred to is the case of *Ramón Luis Ayala Rodríguez a/k/a Raymond Ayala Rodríguez* v. *Mireddys González Castellanos*, Civil Case No. SJ2024RF01618, before the Puerto Rico Court of First Instance, Carolina Part ("Case SJ2024RF01618. The Judgment issued in this case speaks for itself and is attached as **Exhibit A** of this *Motion to Dismiss or to Stay the Proceedings*.

x.   Ayala Rodríguez filed for injunctive relief in the Court of First Instance of Puerto Rico to get control of El Cartel and Los Cangris, and on December 20, 2024, the parties informed the Court that they had reached an agreement to, among other things, transfer control of the mentioned entities to Ayala-Rodríguez. The Court acknowledged the agreement on the record and on December 26, 2024, pursuant to the parties' stipulation, the Court issued a final judgment. ¶*28 of the Complaint at Dkt. No. 1*. This Honorable Court can take judicial notice that case referred to in paragraph 28 of the Complaint are two cases that were consolidated: *Ramón L. Ayala Rodríguez a.k.a. Raymond Ayala Rodríguez a.k.a Daddy Yankee; Big Boss; Dy; Legendaddy* v. *Mireddys González Castellanos et al.*, Civil Case No. SJ2024CV11465, and case *Ramón L. Ayala Rodríguez a.k.a. Raymond Ayala Rodríguez a.k.a Daddy Yankee; Big Boss; Dy; Legendaddy* v. *Mireddys González Castellanos et al.*, Civil Case No. SJ2024CV11466, before the Puerto Court of First Instance, San Juan Part ("Consolidated Cases"). The Judgment issued in these consolidated cases speaks for itself and is attached as **Exhibit B** of this *Motion to Dismiss or to Stay the Proceedings*.

xi.   Mireddys was the President and a Director of El Cartel and Los Cangris until December 20, 2024. ¶*11 of the Complaint at Dkt. No. 1*.

xii.  Ayeicha was the Secretary and Treasurer of Plaintiff's until December 20, 2024, when she knew she was no longer an officer of Plaintiffs following Mireddys removal. ¶*12 of the Complaint at Dkt. No. 1*.

xiii. As a consequence of the agreement reached in the Consolidated Cases, the managerial authority over El Cartel and Los Cangris was transferred to Ayala-Rodríguez. ¶*68 of the Complaint at Dkt. No. 1*.

xiv.    As a consequence of the agreement reached in the Consolidated Cases, a transition process was implemented to assist Ayala-Rodríguez to take control of the corporate affairs of El Cartel and Los Cangris, for which Ayala-Rodríguez hired Driven PSC ("Driven"), a professional accounting and consulting firm.  *¶32 of the Complaint at Dkt. No. 1.*

xv.    On or about December 29, 2024, both Defendants appeared at the office of Driven.  *¶32 of the Complaint at Dkt. No. 1.*

xvi.    On the day Defendants appeared at Driven, instead of handing over the companies' complete records, they selectively provided fragments of the records.  *¶33 of the Complaint at Dkt. No. 1.*

xvii.    On the day Defendants appeared at Driven, they withheld the password of the email account known as mireddys@cartelrecords.com. *¶34 of the Complaint at Dkt. No. 1.*

xviii.    On December 30, 2024, Defendants handed over to Driven the password for the email account mireddys@cartelrecords.com. *¶35 of the Complaint at Dkt. No. 1.*

xix.    Before handing over to Driven the password for the email account mireddys@cartelrecords.com, Defendants deleted a collection of records from said email account.  *¶35 of the Complaint at Dkt. No. 1.*

xx.    The email account mireddys@cartelrecords.com was not personal, but was company property. The communications from and with mireddys@cartelrecords.com were all part of the corporate records regardless of the content. *¶36 of the Complaint at Dkt. No. 1.*

xxi.    Driven was tasked with conducting a forensic review of the company's email account mireddys@cartelrecords.com, and upon examination of said email account, on or about December 30, 2024, after 7:00pm, Driven discovered that all sent emails dated between July 23, 2020 and December 29, 2024 had been deleted. *¶4 of the Complaint at Dkt. No. 1.*

xxii.    On or January 28, 2025, Driven identified additional deletions that occurred on December 30, 2024, before 7:00pm, of a series of files from the email account mireddys@cartelrecords.com. ¶*49 of the Complaint at Dkt. No. 1.*

xxiii.   The email account mireddys@cartelrecords.com was hosted at all relevant times through a cloud-based email system provided and maintained by Google LLC ("Google"). ¶*50 of the Complaint at Dkt. No. 1.*

xxiv.    Driven contacted Google to determine whether recovery of the emails and filed deleted from the email mireddys@cartelrecords.com was possible, and Google confirmed that deleted data was retained for no more than 25 days. Because more than 25 days had passed, Driven could not recover the deleted emails and files. ¶*50 of the Complaint at Dkt. No. 1.*

xxv.    On April 21, 2025, Ayala-Rodríguez formally approved the dissolution of El Cartel. ¶*64 of the Complaint at Dkt. No. 1.*

xxvi.    Los Cangris has not been formally dissolved; however, a dissolution proceeding is currently pending in state court. ¶*65 of the Complaint at Dkt. No. 1.* This Honorable Court can take judicial notice that the case referred to in paragraph 65 of the Complaint is the case of *Ramón L. Ayala Rodríguez a.k.a. Daddy Yankee; Big Boss & Dy* v. *Mireddys González Castellanos et al*., Civil Case No. SJ2025CV03484, before the Puerto Court of First Instance, San Juan Part ("Case SJ2025CV03484"). The Complaint filed in that case by Ayala-Rodríguez speaks for itself and is attached as **Exhibit C** of this *Motion to Dismiss or to Stay the Proceedings*.

Based on these factual allegations, Plaintiffs aver that Defendants "access[ed] the mireddys@cartelrecords.com email account **without authorization** for the purpose of deleting emails and files." (Emphasis supplied). ¶*67 of the Complaint at Dkt. No. 1.* Plaintiffs sustain that

Defendants conspired to violate and violated certain sections of the Computer Fraud and Abuse Act ("CFAA") and violated the Stored Communications Act ("SCA").

Plaintiffs request this Honorable Court to grant them compensatory and punitive damages, and request injunctive relief ordering Defendants to return and restore the emails and files that they allege were deleted from the email account mireddys@cartelrecords.com.

### **Facts that should be admitted as true for the evaluation of this *Motion to Dismiss or to Stay Proceedings* because are included in documents attached or fairly incorporated into the complaint, and are susceptible to judicial notice**

1. Ayala-Rodríguez has filed the following cases against Mireddys and/or Ayeicha in the Puerto Rico Court of First Instance:

   a. Case SJ2024RF01618, regarding Divorce. See, **Exhibit A** of this *Motion to Dismiss or to Stay the Proceeding*.

   b. The Consolidated Cases, regarding statutory injunction under certain articles of the Puerto Rico General Act of Corporations. See, **Exhibit B** of this *Motion to Dismiss or to Stay the Proceeding*.

   c. Case SJ2025CV03484, requesting the dissolution of several entities that were constituted while Ayala-Rodriguez and Mireddys were married. See, **Exhibit C** of this *Motion to Dismiss or to Stay the Proceeding*.

   d. The case of *Ramón L. Ayala Rodíguez, a.k.a. Daddy Yankee, personally and as the representative of El Cartel and Los Cangris* v. *Mireddys González Castellanos et al.*, Civil Case CA2025CV00679, regarding breach of fiduciary duties ("Case CA2025CV00679"). See, **Exhibit D** of this *Motion to Dismiss or to Stay the Proceeding*.

8

2. Mireddys and Ayala-Rodríguez married on March 20, 1995. See, **Exhibit A** of this *Motion to Dismiss or to Stay the Proceeding*.

3. El Cartel and Los Cangris were constituted while Mireddys and Ayala-Rodríguez were married. *¶9-10 of the Complaint at Dkt. No. 1.*[1]

4. As a result of their divorce, Mireddys and Ayala-Rodríguez have community property (assets and liabilities) to divide. See, **Exhibit A** of this *Motion to Dismiss or to Stay the Proceeding*.

5. On February 18, 2025, a Judgment was issued in Case SJ2024RF01618 ordering the parties, among other things, to jointly administer the former marital assets. See, **Exhibit A** of this *Motion to Dismiss or to Stay the Proceeding*.

6. On December 26, 2024, a Judgment was issued in the Consolidated Cases incorporating the agreement reached between Ayala-Rodríguez and Mireddys, which included, among other terms and conditions, (i) that Ayala-Rodríguez assumed the presidency of El Cartel and Los Cangris, (ii) a meeting was scheduled for December 26,2024, to carry out any tasks necessary for the transition and (iii) that the balance in the account of both entities shall remain untouched "for a period of thirty (30) days while the new control is able to have access to all of the information". See, **Exhibit B** of this *Motion to Dismiss or to Stay the Proceeding*.

7. Pursuant to the terms and conditions of the agreement reached in the Consolidated Cases, on December 20, 2024, Ayala-Rodríguez and Mireddys considered a transition period of thirty (30) days, period that would expire on January 19, 2025. See, **Exhibit B** of this *Motion to Dismiss or to Stay the Proceeding*.

---

[1] Therefore, these entities are part of the marital assets to be divided among Ayala-Rodríguez and Mireddys. See, 31 LPRA §6965(e).

8.  On April 23, 2025, Ayala-Rodríguez filed Case SJ2025CV03484.  See, **Exhibit C** of this *Motion to Dismiss or to Stay the Proceeding*.

9.  In the Complaint filed in Case SJ2025CV03484, Ayala-Rodríguez alleges and acknowledges that Mireddys has an interest in the shares of every entity that was constituted while they were married.  See, ¶12 of **Exhibit C** of this *Motion to Dismiss or to Stay the Proceeding*.

10. In the Complaint filed in Case SJ2025CV03484, Ayala-Rodríguez alleges and acknowledges that because of the agreement reached in the Consolidated Cases he is the current president, director and officer of Los Cangris, and therefore he is the one who manages it. See, ¶14 of **Exhibit C** of this *Motion to Dismiss or to Stay the Proceeding*.

11. In the Complaint filed in Case SJ2025CV03484, Ayala-Rodríguez alleges and acknowledges that he filed Case CA2025CV00679 "for Damages against Mireddys and her sister -Ms. Ayeicha González Castellanos, former treasurer and officer of Los Cangris- based on the identified findings related to the years in which they were in charge of the administration of the companies organized for assistance in and the development of his professional career." See, ¶18 of **Exhibit C** of this *Motion to Dismiss or to Stay the Proceeding*.

12. In the Complaint filed in Case SJ2025CV03484, Ayala-Rodríguez alleges and acknowledges that, after recovering the control of El Cartel, he identified serious deficiencies in the previous administration and, as a result, "stopped providing services to the company as an artist. Since a viable commercial purpose no longer existed, it became

necessary to dissolve the company, which was done."[2]    See, ¶22 of **Exhibit C** of this *Motion to Dismiss or to Stay the Proceeding*.

13. On March 4, 2025, Ayala-Rodríguez filed Case CA2025CV00679 alleging that Defendants violated fiduciary duties while acting as director and/or official of El Cartel and Los Cangris. See, **Exhibit D** of this *Motion to Dismiss or to Stay the Proceeding*.

14. In the Complaint filed in Case CA2025CV00679, Ayala-Rodríguez alleges and acknowledges that when El Cartel and Los Cangris were created he was married to Mireddys. See, ¶10 of **Exhibit D** of this *Motion to Dismiss or to Stay the Proceeding*.

15. In the Complaint filed in Case CA2025CV00679, Ayala-Rodríguez alleges and acknowledges that he voluntarily assigned Mireddys the task of handling the matters and administration of El Cartel and Los Cangris. See, ¶11 of **Exhibit D** of this *Motion to Dismiss or to Stay the Proceeding*.

16. In the Complaint filed in Case CA2025CV00679, Ayala-Rodríguez allege the following, among other things:[3]

    a.   Defendants destroyed and disappeared corporate records and evidence between the years 2019 and 2024. The documents related to the operation of the business and artistic career of the plaintiff were not in the boxes that Defendants delivered or the electronic corporate documents that have been accessed. See, ¶63 of **Exhibit D** of this *Motion to Dismiss or to Stay the Proceeding*.

---

[2] If Ayala Rodríguez stopped providing services as an artist to El Cartel, and El Cartel was already dissolved, then it cannot be argued that El Cartel is still suffering damages and, among other things, the irreparable harm for the preliminary injunction is non-existing.

[3] The Complaint filed by Ayala Rodríguez in Case CA2025CV00679 include 125 allegations. Defendants will refer only to the allegations relevant for this *Motion to Dismiss or to Stay Proceedings*, but request this Honorable Court to take judicial notice of the totality of the Complaint.

b.  Defendants did not provide the documents stored in their emails, which they would use continuously, and without distinction or separation, for multiple corporate matters and in relation to the Ayala-Rodriguez' music career. See, ¶64 of **Exhibit D** of this *Motion to Dismiss or to Stay the Proceeding*.

c.  Defendants, before the administrative transition of the companies ordered by the Court of First Instance - during the period between December 26-30, 2024 – erased or eliminated a significant number of emails related to the operation of the entities and plaintiff Ayala Rodríguez' career. See, ¶65 of **Exhibit D** of this *Motion to Dismiss or to Stay the Proceeding*.

d.  On December 30, 2024, folders and wire transfers in the name of Mireddys González Castellanos were erased without notifying or providing any justification for doing so. See, ¶67 of **Exhibit D** of this *Motion to Dismiss or to Stay the Proceeding*.

As will be explained, even assuming as true as this stage of the proceedings the well-pleaded factual allegations included in the Complaint of this case, or the allegations made by Ayala Rodriguez in other cases of which it is requested that this Honorable Court take judicial notice, Plaintiffs failed to state a claim upon which relief can be granted by this Honorable Court under the CFAA or the SCA. Therefore, dismissal is warranted with prejudice.

## <u>CFAA claim fails as a matter of law</u>

The CFAA dates from 1986 as a response from Congress to rising computer related criminal activity. Almost everyone agrees that it was intended toward (i) so-called hackers, whether external or internal to a system, meaning those who "acces[s] a computer without any permission at all", *LVRC Holdings LLC* v. *Brekka*, 581 F. 3d 1127, 1133 (CA9 2009); see also

*Pulte Homes, Inc.* v. *Laborers' Int'l Union of North Am.*, 648 F. 3d 295, 304 (CA6 2011), and (ii) those who access a computer with permission, but then "'exceed' the parameters of authorized access by entering an area of the computer to which [that] authorization does not extend." *United States* v. *Valle*, 807 F. 3d 508, 524 (CA2 2015). See also *Van Buren v. United States*, 593 U.S. 374, 389-390 (2021).

Therefore, the CFAA was enacted to prevent intentional intrusion onto someone else's computer—specifically, computer hacking. See *United States v. Nosal (Nosal I)*, 676 F.3d 854, 858 (9th Cir. 2012) (citing S. Rep. No. 99-432, at 9 (1986) (Conf. Rep.)).

Plaintiffs invoke Section 1030(a)(5)(B) of the CFAA which subjects to criminal liability anyone who "intentionally accesses a protected computer **without authorization**, and as a result of such conduct, recklessly causes damage". (Emphasis supplied). Importantly, all seven (7) provisions of the CFAA include the "**without authorization**" element, including § 1030(a)(2).

But Plaintiffs allege and acknowledge in the Complaint that the email account at issue here, mireddys@cartelrecords.com, was historically accessed and used by Mireddys in her capacity as President and Director of the named entities. Plaintiffs **do not allege that any of the Defendants bypassed technical safeguards, stole credentials, or engaged in any hacking into someone else's account or computer**. Rather, Plaintiffs complain that Defendants, before handing over the password, deleted some emails from an account to which they always had access.

This poses a contradiction to their argument because, either Defendants did not have authorization or had it, but it cannot be both. Plaintiffs admit that Defendants had a password when they allegedly deleted some email messages, furthermore the email account has indeed Mireddys name (mireddys@cartelrecords.com). Pursuant to the well-pleaded facts, when Defendants allegedly deleted the emails and files, the parties were in the middle of the management transition

period agreed in the Consolidated Cases and, therefore, Defendants were still duly authorized to access their accounts. In addition, all the alleged deletions took place before Defendants handed to Driven the password to the account mireddys@cartelrecords.com.  As such, after that password was delivered, no deletions occurred and cannot occur, because from that point forward Defendants do not have access to the accounts.  Thus, the possibility that Defendants delete email or files in the future is nonexistent.

Consequently, Defendants simply **had authorization to access the accounts when the alleged deletion occurred**. It is entirely irrelevant and outside of the scope of the CFAA what use or improper purpose Defendants might have had regarding the email messages that she could access just like she always had done, up to that point in time. Whether her actions regarding the use of email messages, including deletion, constitute a breach of an alleged fiduciary corporate duty is outside the realm of the CFAA or federal jurisdiction as we discuss below.

In *Van Buren v. United States*, 593 U.S. 374 (2021), the Supreme Court clarified the meaning of "exceeds authorized access" but, by necessary implication, also the "without authorization" clause under the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030. While *Van Buren* addressed § 1030(a)(2), the Court's reasoning applies equally to all the CFAA provisions that use the same terminology, including § 1030(a)(5)(B) invoked by Plaintiffs here.

The *Van Buren* decision adopts the view of Van Buren in making sense of the statutory framework of the CFAA treating the "without authorization" and "exceeds authorized access" clauses consistently. This leads to the so-called gates-up-or-down approach that is widely discussed and adopted by the majority in the *Van Buren* decision. Under this reading, liability under both clauses ("without authorization" and "exceeds authorized access") stems from a gates-

14

up-or-down inquiry - one either can or cannot access a computer system, and one either can or cannot access certain areas within the system -. *Van Buren* at 390.

**The facts alleged by Plaintiffs in the *Complaint*, taken as true for the consideration of this *Motion to Dismiss or to Stay Proceedings*, demonstrate that both Defendants, as officials or directors of the named entities, could access the email accounts and had the password (i.e. "authority") to do so. Defendants did not have to bypass technical safeguards, steal a password or engage in any form of hacking to gain access to the email accounts. Therefore, they were authorized to access the system under the CFAA's definition of "authorized access".**

Perhaps to avoid having to admit that Defendants had authorization to the email accounts, within the meaning of the CFAA, Plaintiffs' allegations align more with the reasoning behind *International Airport Centers, L.L.C. v. Citrin*, 440 F.3d 418 (7th Cir. 2006), holding that once an employee acts disloyally or outside their fiduciary role, their access becomes unauthorized, even if credentials remain valid; and with *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 583–84 (1st Cir. 2001), holding that violations of a confidentiality agreement or other contractual restraints could give rise to a claim for unauthorized access under the CFAA.

However, the reasoning behind those two decisions was also rejected by the *Van Buren* decision which held that the CFAA does not criminalize misuse of authorized access, even when it violates company policy, contracts, or fiduciary duties. Instead, "without authorization" or "exceeds authorized access" must refer to technical restrictions, not subjective purposes or purpose-based limitations. See *Van Buren* at 396 and *hiQ Labs, Inc. v. LinkedIn Corporation*, 31 F.4th 1180 (9th Cir. 2022) (Post *Van Buren* decision holding that the Supreme Court had approved of *Nosal I*, supra, and abrogated *EF Cultural Travel and Rodriguez. Van Buren v. United States*

141 S. Ct. at 1653–54 & n.2; also holding "For all these reasons, it appears that the CFAA's prohibition on accessing a computer "without authorization" is violated when a person circumvents a computer's generally applicable rules regarding access permissions, such as username and password requirements, to gain access to a computer." at 1201).

Plaintiffs go to great lengths to somehow conflate that (1) Defendants had been "removed" from their managerial positions and that there was a Puerto Rico Court judgement that had adopted an **agreement** between Mireddys and Ayala-Rodríguez transferring the "control" of the companies to Ayala-Rodríguez with (2) the technical aspects of access to a computer that would render such access as "without authorization". The "without authorization" clause under the CFAA only refers to the latter. Simply put, pursuant to *Van Buren* the removal from a managerial role is not the same as the breach or hacking of the technical safeguards or credentials of an email account.

Nowhere in their pleadings Plaintiffs allege that a judicial order exists specifically regarding the email account at issue, nor its credentials, nor a revoking of technical credentials, nor a prohibition to delete files from the account that belonged to any of the Defendants. But even if there was anything like that, Plaintiffs still would have to **allege that Defendants bypassed technical safeguards, stole credentials, or engaged in any hacking** for there to be a violation under the CFAA.

Rather, what Plaintiffs allegations sound like is more a breach of a fiduciary duty limited to the corporate context which has been rejected consistently by federal courts to constitute a violation under the CFAA. Under *Van Buren*, the CFAA does not prohibit this conduct. The statute does not convert internal corporate disputes or misuse of permitted access into federal computer crimes. The CFAA is a hacking statute, not a catch-all for digital mismanagement.

The Supreme Court in *Van Buren* points to the structural problem that the Government had in that case arguing that the CFAA gave rise to civil liability under §1030(g), with the statute defining "damage" and "loss" to specify what a plaintiff can recover. Plaintiffs here allege to have suffered damages and, therefore, they have the same problem pinpointed by the Supreme Court in *Van Buren*, namely that "[b]oth terms focus on technological harms to computer data or systems [and] [s]uch provisions make sense in a scheme aimed at avoiding the ordinary consequences of hacking but are **ill fitted to remediating 'misuse' of sensitive information that employees permissibly access using their computers.**" (Emphasis supplied).

Plaintiffs' allegations of unauthorized conduct by Defendants might rest, at bottom, on claims of **breach of fiduciary duty**, **mismanagement, and failure to properly turn over corporate records,** all matters that, by Plaintiffs' own admission, are the subject of ongoing proceedings in the courts of Puerto Rico.[4]

Yet, rather than allow that local forum to adjudicate the fiduciary and corporate governance claims within its jurisdiction, Plaintiffs now ask this Court to entertain a parallel theory of liability under federal statutes - the CFAA and SCA - by recharacterizing a business dispute as "unauthorized access" to a protected computer and unlawful deletion of stored communications. All this surrounded by the divorce proceedings between two public figures.  Consequently, the filing of this case can be described as the most recent maneuver implemented by Ayala Rodríguez to pressure Mireddys, **<u>misusing</u>** the time and resources of this Court as a **secondary venue to obtain leverage and duplicative relief**.

If Plaintiffs contend that Defendants violated their duties as directors or officers of the named entities, or improperly handled corporate property during a transition, those allegations are

---

[4] This issue is discussed in another section of this *Motion to Dismiss or to Stay the Proceedings*.

already before the consideration of the Puerto Rico Court of First Instance, a forum with proper venue and jurisdiction that is equipped to assess the scope and consequences of any managerial misconduct.

This Court should not permit Plaintiffs to transform a localized fiduciary conflict into a federal "hacking" claim based on conclusory allegations that Defendants' access - always authorized - became criminal by operation of a corporate disagreement.

Accordingly, Plaintiffs claim under CFAA fails as a matter of law.

### SCA claim fails as a matter of law

Plaintiffs also allege that Defendants violated the Stored Communications Act (SCA), 18 U.S.C. § 2701 *et seq*., by deleting emails from the Gmail account allegedly used to manage company business. This claim also fails as a matter of law.

The SCA protects only electronic communications that are in "electronic storage," defined narrowly in 18 U.S.C. § 2510(17) to mean:

(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and

(B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

**Courts have consistently held that emails that have already been accessed by the recipient do not fall within this definition**. See *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 114 (3d Cir. 2003), holding that emails that have been accessed by recipient are not in intermediate storage incidental to transmission, but on post-transmission storage. See also *U.S. v. Weaver,* 636 F.Supp.2d 769, 771 (C.D. Ill. 2009); *Hilderman v. Enea TekSci, Inc.* 551 F.Supp.2d 1183, 1205 (S.D.Cal.2008), holding that "courts have construed subsection (A) as applying to e-

mail messages stored on an ISP's server pending delivery to the recipient, but not e-mail messages remaining on an ISP's server after delivery."

Here, Plaintiffs admit that Defendants were the regular users of the email accounts in question and with knowledge of the password. The emails were not in transmission or being stored incidentally, because they had already been received and read. Thus, they were **not** in "electronic storage" within the definition of the term under the SCA.

The second prong of the definition requires that the storage be "for purposes of backup protection." Plaintiffs make no allegation - and offer no evidence - that the Google email service functioned as a backup system for previously sent or stored communications. Courts interpret this provision narrowly and exclude standard inbox storage from its scope. See *Jennings v. Jennings*, 736 S.E.2d 242, 245 (S.C. 2012), holding that e-mails which an intended recipient has opened may, when not deleted, be 'stored' in common parlance; but in light of the restriction of 'storage' in § 2510(17)(B) of solely for 'backup protection', **e-mails which the intended recipient has opened, but not deleted, and thus remain available for later re-opening, are not being kept 'for the purposes of backup protection'**.

Plaintiffs also fail to allege any unauthorized technical access. The SCA prohibits accessing a facility that provides electronic communication services without authorization. But it does not prohibit a user from accessing their own account. The SCA exempts, *inter alia*, conduct "authorized ... by the person or entity providing a wire or electronic communications service," *id.* § 2701(c)(1), or "by a user of that service with respect to a communication of or intended for that user". *id.* § 2701(c)(2).

Here, Defendants had valid access credentials to the email accounts. Plaintiffs' allegations concern the use of an account to which Defendants had access. This case is not about unauthorized intrusion. The SCA simply does not apply to this scenario.

## In the alternative, this Honorable Court should abstain from exercising its jurisdiction and dismiss the case or stay the proceedings

There is no doubt that the same factual allegations brought before this Honorable Court are being litigated before the Puerto Rico Court of First Instance, Carolina Part, in Case CA2025CV00679, which was filed by Ayala-Rodríguez as the representative of El Cartel and Los Cangris. There's also no doubt that after filing for divorce in December 2024, Ayala-Rodríguez or the entities he controls have filed three (3) additional cases against the appearing Defendants. Ayala-Rodriguez' strategy is obvious: to weaken, pressure and harass Mireddys in preparation for the process of liquidation of their marital assets.

In short, this case arises out of Rodríguez-Ayala's strategy to pressure and harass Mireddys regarding their dispute over the proper liquidation and distribution of their marital assets, which include the shares of El Cartel and Los Cangris. Therefore, the proper question is whether the Plaintiffs, managed and controlled by Ayala-Rodríguez, managed to drag this Honorable Federal Court into the fray related to the distribution of marital assets which is before the consideration of the Puerto Rico Courts of First Instance. We most respectfully posit the answer is YES, and we request this Honorable Court not to allow such preposterous and patently abusive conduct.

"Under the doctrine established in *Colorado Rivers Water Conservation District* v. *United Sates*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), a federal court may abstain from exercising its jurisdiction in certain instances where there is a parallel state court proceeding, 'based on considerations of wise judicial administration' that counsel against duplicative

lawsuits." *Glassie* v. *Doucette*, 55 F.4th 58, 63 (1ˢᵗ Cir. 2022), quoting *Jiménez* v. *Rodríguez-Pagán*, 597 F.3d 18, 27 (1ˢᵗ Cir. 2010).

The underlying principal for which federal courts should in certain circumstances abstain from exercising its jurisdiction when a parallel case is being litigated in a competent local court is "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger* v. *Harris*, 401 U.S. 37, 44 (1971).

Abstention can be warranted based on "considerations of '(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist*. v. *U.S*., 424 U.S. 800, 817 (1976). In addition, when non-diverse parties are absent from the federal litigation and the state court proceedings are more advanced than the federal case, "the desirability of avoiding piecemeal litigation favors staying the federal proceeding." *Bacardi Intern. Ltd.* v. *Suarez & Co., Inc*., 719 F.3d 1, 14-15 (2013).

In order "to create the possibility of abstention under *Colorado River*, the federal -and state- court cases must be 'sufficiently parallel,' that is, the state action must resolve all of the claims in the federal case." *Glassie* v. *Doucette*, supra, at 64, quoting *Villa Marina Yacht Sales, Inc.* v. *Hatteras Yachts*, 947 F.2d 529, 533 (1ˢᵗ Cir. 1991).

The First Circuit has identified the following non-exhaustive factors that should be considered when determining to dismiss a case or stay the proceedings under the abstention doctrine established in *Colorado Rivers*: "(1) whether any court has jurisdiction over a res; (2) the geographical inconvenience of the federal forum; (3) the desirability of avoiding piecemeal

litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal or state law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious nature of the federal claim; and (8) respect to the principles underlying removal jurisdiction." *Bacardi Intern. Ltd.* v. *Suarez & Co., Inc*., supra, at 15 footnote no.17.

The list of non-exhaustive factors "is not a 'limitus test' and 'must remain a discretionary tool'." *Nazario-Lugo* v. *Caribevision Holdings, Inc*., 670 F.3d 109, 115 (1st Cir. 2012), quoting *Currie* v. *Grp. Ins. Comm'n*, 290 F.3d 1,10 (1st Cir. 2002). "The weight to be given any given factor depends on the circumstances at hand." *Nazario-Lugo* v. *Caribevision Holdings, Inc*., supra.

Factors listed as number 1, 2 and 8 do not apply to this case. Regarding the desirability of avoiding piecemeal litigation, there is no doubt that the factual allegations made in the instant case are the same as some of the allegations made in Case CA2025CV00679. Consequently, the same evidence will be used in both cases, similar discovery will be conducted, and the probability of different rulings about the same set of facts is possible. All of this under the scenario in which Ayala-Rodríguez has filed four (4) different cases during the last nine (9) months as part of his strategy to weaken Mireddys for the process of liquidation and distribution of the marital assets between them. Therefore, we aver that the exceptional circumstances surrounding this case, as well as considerations of comity and wise judicial administration, rule in favor of this Honorable Court abstaining from exercising its jurisdiction and dismiss the case or, in the alternative, stay the proceedings until a final and unappealable Judgment is issued in Case CA2025CV00679.

The factor regarding the order in which the courts obtained jurisdiction "is not a mechanical concept automatically favoring the party who files first, but rather a concept that favors the case that is the more advanced at the time the *Colorado River* balancing is being done." *Jiménez* v. *Rodríguez-Pagán*, supra, at 30-31. However, that applies for the scenario in which the first case

is filed by one of the parties and the second case by the other party. Here, Case CA2025CV00679 was filed by Ayala-Rodríguez personally and as the representative of El Cartel and Los Cangris, and the instant case was filed by El Cartel and Los Cangris, who are currently under the managerial control of Ayala-Rodríguez. Consequently, here both cases were filed by the same party and including similar factual allegations.[5] Therefore, equity and abstention principles are in favor of dismissing or staying the second case, which is this one. Anyway, in Case CA2025CV00679 a motion to dismiss was already denied by the Puerto Rico Court, and reconsideration is pending resolution. As such, Case CA2025CV00679 is more advanced than this one.

As to the factor of source of law, it was already discussed in this motion the reasons why the CFAA and he SCA do not apply to the facts of this case. Consequently, this is simply a corporate and/or family dispute covered by local law that is already before the consideration of local court.

Finally, the circumstances under which the instant case was filed speak for itself. After filing for divorce and in the wake of initiating the proceedings to distribute the marital assets, Ayala-Rodriguez initiated three (3) cases, two (2) in local court and this one, being the instant case the last one. All of this within the time frame of nine (9) months. Thus, the vexatious nature of this federal claim is obvious.

Consequently, it is respectfully requested that this Honorable Court abstain from exercising its jurisdiction and dismiss this case or, alternatively, stay the proceedings until a final and unappealable Judgment is issued in Case CA2025CV00679.

**WHEREFORE**, it is respectfully requested from this Honorable Court to grant this motion and (i) DISMISS with prejudice the Complaint because it fails to state a claim upon relief can be

---

[5] This also sounds like a forum shopping strategy from plaintiffs.

granted under the CFAA and the SCA, (ii) ABSTAIN from exercising it jurisdiction and DISMISS

the Complaint or (iii) STAY the proceedings until a final and unappealable Judgment is issued in

Case CA2025CV00679.


## CERTIFICATE OF SERVICE

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system which will send notification of such filing to all attorneys of

record.

**RESPECTFULLY SUBMITTED.**

In Guaynabo, Puerto Rico, this August 11, 2025.

<u>**COUNSELS FOR MIREDDYS**</u>:

| | |
|---|---|
| **Marichal Hernández LLC**<br>1510 F.D Roosevelt Avenue, Fl. 9<br>Guaynabo, PR, 00968-2620<br>PO Box 190095<br>San Juan, PR 00919-0095<br>Tel. 787.753.1565<br>Fax. 787.763.1704<br><br>/s/**Rafael Santiago-Rosa**<br>USDC NO.: 211705<br>rsantiago@mhlex.com<br><br>**/s/José R. Negrón-Fernández**<br>José R. Negrón-Fernández<br>USDC P.R. NO. 212713<br><br>/s/**Miguel A. Rangel-Rosas**<br>**U**SDC NO.: 218601<br>mrangel@mhlex.com | **Pedro J. Rivera Rivera, Law Office**<br>**USDC # 228702**<br>Edificio Triple S Plaza<br>1510 Ave. FD Roosevelt<br>Ste 9B-1<br>Guaynabo, PR 00968<br><br>Mobile 787-599-3702<br>E-mail: pjrivera@pjrlex.com<br><br>*S/Pedro J. Rivera-Rivera*<br>**PEDRO J. RIVERA RIVERA** |

**COUNSEL FOR AYEICHA**:

**ALBERTO RIVERA-RAMOS, ESQ.**
*Attorney for* Ayeicha González-Castellanos
3001 Ave. Isla Verde
Plaza del Mar,  Apt. 305
Carolina, PR 00979
Tel. (787) 239-7988
Email: rivalberto@gmail.com


By: s/*Alberto Rivera-Ramos*
USDC PR No. 227502