CERTIFIED TRANSLATION

**COMMONWEALTH OF PUERTO RICO**
**COURT OF FIRST INSTANCE**
**SUPERIOR COURT OF CAROLINA**

| | |
|---|---|
| **RAMÓN L. AYALA RODRÍGUEZ, A.K.A. DADDY YANKEE, personally and as the representative of EL CARTEL RECORDS, INC. and LOS CANGRIS, INC.** | **CIVIL NO.:** |
| Plaintiffs | **MATTER:** |
| **Vs.** | **VIOLATION FIDUCIARY DUTIES; BREACH OF CONTRACT; ACTION FOR DAMAGES** |
| **MIREDDYS GONZÁLEZ CASTELLANOS, AYEICHA GONZÁLEZ CASTELLANOS,** | |
| Defendants | |

**COMPLAINT**

**TO THE HONORABLE COURT:**

Come now the plaintiffs, Ramón L. Ayala Rodríguez, personally and as the representative of El Cartel Récords, Inc. and Los Cangris Inc., through the undersigned counsel, and STATE AND REQUEST:

**I. <u>PARTIES</u>:**

1. El Cartel Récords, Inc. (hereinafter "El Cartel") is a corporation organized in Puerto Rico, in the business of creating, publishing and distributing compositions created by international artists, composers and producers, mainly the compositions of Ramón Luis Ayala Rodríguez, internationally known as Daddy Yankee. It also channels and shows the entire world his creative work. Its address for the purposes of this complaint is Juan J. Jiménez Street, 504 Parque Central, San Juan, PR 00918, and its email, among others, is dy@cartelrecords.com.

2. Plaintiff Los Cangris, Inc. (hereinafter "Los Cangris") is a corporation organized in Puerto Rico, in the business of creating, publishing and distributing compositions created by international artists, composers and producers, including the compositions of Ramón Luis Ayala Rodríguez, internationally known as Daddy Yankee, channeling and showing the entire world his creative work. Its address for the purposes of this complaint is Juan J. Jiménez Street, 504

1

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Parque Central, San Juan, PR 00918, and its email, among others, is dy@cartelrecords.com.

3. Plaintiff Ramón L. Ayala Rodríguez, also known as Raymond Ayala, and artistically known as Daddy Yankee, as well as "el Cangri," "Big Boss," "Legendaddy" and "DY," among others (hereinafter Daddy Yankee), is of legal age, an urban music singer, a composer and an entrepreneur, whose address for the purpose of this complaint is Juan J. Jiménez Street, 504 Parque Central, San Juan, Puerto Rico 00918, and whose email is promesasalmos128@gmail.com. Ayala Rodríguez is also an officer, president, director and shareholder of El Cartel and Los Cangris, among other related entities.

4. Defendant Mireddys González Castellanos (hereinafter "Mireddys") is of legal age. Until December of 2024 she was, among other entities, a director, president and officer of El Cartel and Los Cangris. The services that she provided or may have provided for the benefit of the companies were properly compensated. Her address and email for the purposes of this complaint is Vistamar Marina Este, Jaen Street F3, Carolina, PR, 00983, and her email is mireddys@yahoo.com.

5. Defendant Ayeicha González Castellanos (hereinafter Ayeicha) is of legal age, sister of defendant Mireddys González Castellanos, and until December of 2024 she was a director, treasurer and "Comptroller," among others, of El Cartel and Los Cangris. Her address for the purposes of this complaint is Vistamar Marina 1118, Carolina, PR, 00983, and her email is agc2006@gmail.com. The services that she provided or may have provided for the benefit of the companies we properly compensated.

## II. HISTORICAL AND PROCEDURAL BACKGROUND

6. El Cartel Récords, Inc. and Los Cangris, Inc. were created by plaintiff Ayala Rodríguez, Daddy Yankee, as instruments for the development of his artistic and professional activity.

7. Before he created El Cartel, and since he was very young, the creativity and charisma of plaintiff Ayala Rodríguez turned

2



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

him into one of the most prominent figures of the urban genre, acquiring popularity in Puerto Rico, the United States and other places in the world.

8.  Daddy Yankee's prominence and success are still current. This is so because of his talent as a singer and his creativity as a composer, since he regularly and habitually creates intangible artistic property which, also as a result of his entrepreneurial talent, he has developed and protected and continues to develop and protect.

9.  In addition to his individual artistic presentations and activities, Daddy Yankee has participated, assisted and collaborated with other singers of the urban genre and still continues to do so.

10. When he created El Cartel Récords, Inc. and Los Cangris, Inc., plaintiff Ayala Rodríguez, Daddy Yankee, was married to defendant Mireddys González Castellanos.

11. For the purpose of concentrating on developing his artistic work and thereby generate income that would result in benefit for the companies, via a constant flow of income from his participations and creations, plaintiff Ayala Rodríguez placed his trust in his wife at the time, Mireddys. She was assigned the task of handling the matters and administration of El Cartel and Los Cangris.

12. Defendant Mireddys recruited her sister Ayeicha in relation to the task that she was assigned to work as director and officer of the entity. Both Mireddys and Ayeicha González Castellanos set and received financial compensation from the resources of the company.

13. Having delegated the properly compensated work to the defendants, plaintiff Ayala Rodríguez, Daddy Yankee, focused his efforts on creating compositions and participating in concerts and multiple presentations in which he played his music generating copious income for the company.

14. Codefendants Mireddys and Ayeicha González Castellanos proceeded to accumulate for themselves greater power that the one authorized, and together made negligent and selfish decisions that harmed both the companies and Mr. Ayala Rodríguez, in his personal capacity and as an artist.

3

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

15. The codefendants did not provide a precise account of their duties, disregarded formalities and requirements of corporate laws, made irresponsible financial decisions, managed the accounting negligently, did not issue calls, kept minutes, records or registries of important transactions, did not hold assemblies or meetings, and improperly alienated Mr. Ayala Rodríguez from the making of decisions.

16. As a result of the defendants' refusal to provide the indispensable documentation regarding the operation of the companies, the plaintiff's music tours/presentations, the final catalogue sale contract along with all appendices, supporting documents and statements after the transaction, current contracts, royalty reports, and the corporate financial information, plaintiff Ayala Rodríguez had to formally request the inspection of documents, for the purpose of acquiring information as to the extension of the obligations and financial matters of the entity and in order to be able to take urgent measures to protect the entity and its assets.

17. The plaintiff's repeated requests to be provided with information and explanations were disregarded and ignored by the defendants for more than 18 months.

18. The defendants were officers of the entities – as they themselves recognized in public registries and internal corporate documents. They were the ones who administered the companies on a daily basis, had absolute control over the accounts and money of the corporations, had the power in terms of practical execution – whether directly or via third parties – and intentionally alienated the plaintiff from the central matters of the companies.

19. As a result of the above-described pattern of conduct, which did not benefit the corporations or the career of the plaintiff, at the beginning of December of 2024, under Article 7.10 of the General Corporations Act of 2009, he sent a communication to defendant Mireddys, requesting access to a series of documents regarding El Cartel and Los Cangris. He also asked that, during the adjudication of the divorce proceeding, all business or financial decisions related to El Cartel, Los Cangris, Daddy Yankee, etc., be consulted with and previously authorized by him.

4

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

CA2025CV00679 03/04/2025 02:18:14 pm Entry No. 1 Page 5 of 23

20. Along with the request for production of documents, the defendants were sent a communication requiring that they preserve the requested documents.

21. Codefendant Mireddys answered the sent letter and, among other things, stated to the plaintiff that he, Raymond Ayala, in other words, Daddy Yankee, did not have a legitimate purpose to request financial information of the corporations, nor of the commercial/musical endeavors of the corporations.

22. The defendant did so even though she knew that Mr. Ayala Rodríguez is the owner of the shares of El Cartel and Los Cangris, in addition to being, for obvious reasons, the most valuable resource of the corporations, since he was the one that generated the millionaire income for the corporations with his artistic talent and creative capacity. By doing so, the defendant deprived the plaintiff of his right of access, interference and information, in relation to all aspects of the entities.

23. Defendant Mireddys González Castellanos was repeatedly warned that the authority that was given to her by Ayala Rodríguez as to internal matters and the operation of the corporations was suspended, and she was ordered to stop carrying out tasks and making representations in relation to the entities without the plaintiff's approval. The foregoing was also notified to codefendant Ayeicha.

24. Both defendant Mireddys González Castellanos, and her sister Ayeicha, ignored Mr. Ayala Rodríguez's warning and continued occupying positions in the companies, acting and making decisions as they pleased as to matters of the entities, causing serious damages to them as a result of their deceitful acts. Said deceit included hindering the access of professionals who provided services to the company.

25. As of today, the acts and commitments, which the defendants may have carried out, and which may be affecting the entities and the plaintiff as a shareholder and artist, are not entirely known.

26. The actions of the defendants seriously affected and continue to affect Ayala Rodríguez's personal and professional development, causing him serious and irreparable harm as a result of the undermining of his image and good name and as a result of the improper use of the entities to the detriment of the plaintiff.

5

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

27. The defendants' actions constitute sabotage that puts the operation of the companies and the career of the plaintiff at risk.

28. The appropriation of the rights of Ayala Rodríguez, and the exclusion from the corporation to which he has been and is being subjected, has affected and continues to affect the normal development and stability of his artistic activities, his good name and image, and his ability to freely practice his career and profession. This has interfered with his ability to continue offering his services as an artist to his own entities.

29. The defendants' deceit in relation to corporate matters, diverted and taken for their personal benefit, has affected and continues to affect the existence of the corporations and undermines their good name and standing.

30. As a result of the defendants' refusal to provide information regarding the operation and administration of the matters of the company, Mr. Ayala Rodríguez filed against them two injunctive actions in the Court of First Instance, Court of San Juan, SJ2024CV11465 and SJ2024CV11466, which were consolidated in the first one.

31. Via a judgment containing an agreement between the parties, in December of 2024, the Court of First Instance issued a decision transferring the control over the direction and administration of the matters of the company to Mr. Ayala Rodríguez and ordered the resignation from all of the administrative and directorial positions of defendants González Castellanos.

32. In the issued judgment, the Court ordered the González Castellanos sisters to collaborate and assist in an orderly and proper transaction [sic] to the new management of the corporations. In spite of the foregoing, the defendants failed to fully comply with the provision of information and delivery of documents that they had in their possession and to which they otherwise had access and so it was necessary to request to and obtain from the Court orders for compliance with the obligation that they had agreed to.

33. The defendants delivered information and documents in snippets. Lastly, they unilaterally signed a letter indicating to the Court that they had provided all of the information for an orderly administrative transfer and the normal and proper continuation of the company.

6

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

34. The statements contained in the aforementioned letter were neither true nor correct. Since the aforementioned court process consisted of an injunctive action, exclusively related to questioning the occupation of managerial positions and the refusal to provide access to corporate information, it could not be used to claim damages against the defendants for their actions or omissions during the period throughout which they performed administrative duties in El Cartel and Los Cangris.

35. As a result, the claim for damages is submitted in this lawsuit, as reserved, notified and stated in the court record of the previous judicial proceeding.

36. Among the concrete actions and omissions by the defendants that have caused harm and injuries to the best interests of the plaintiff corporations and of Mr. Ayala Rodríguez are the ones included starting from paragraph 38 of this motion.

### III. ACTIONS, OMISSIONS AND VIOLATIONS

### A. FISCAL AND FINANCIAL MATTERS

37. In spite of not having received the documents related to the financial matters of the companies, and receiving an incomplete accounting system, what was inspected reveals multiple violations and harmful acts against the plaintiff and his companies.

38. On December 12, 2024, the defendants – after being notified that they could not carry out any tasks on behalf of the corporations, including those which would impact its fiscal condition without the knowledge and authorization of the plaintiff – carried out a bank transfer withdrawing, according to obtained information, twenty million dollars ($20,000,000) from the bank account of Los Cangris and eighty million dollars ($80,000,000) from the bank account of El Cartel.

39. Said act, in addition to constituting a serious breach of different legal rules, put at risk the stability of the entity, because it was carried out in the absence of any type of fiscal or financial support consisting of a formal opinion that would provide sound grounds for making said decision.

7

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

40. The bank transactions carried out under the control of defendant Mireddys, and disguised as a supposed payment of dividends, endangered the fiscal health of the companies as a result of diminishing or reducing the capital of the same.

41. The withdrawals made by Mireddys constitute a crude and frivolous attempt to unilaterally and improperly liquidate resources that did not belong to her for her personal benefit.

42. The plaintiff knew and had knowledge of the fact that the above was inappropriate because, along with the plaintiff, she was a party to a divorce proceeding in which the value of the capital shares would be included in the inventory of joint community property, subject to adjudication and division as part of a process of liquidation of community marital property. But, until said process of liquidation takes place, the corporate assets and resources do not belong to her in her individual capacity. But, additionally, the plaintiff has always made it clear that he is willing to recognize Mireddys González Castellanos's legitimate share in the eventual liquidation of the community marital property.

43. Defendant Mireddys González Castellanos attempted to extract corporate resources with only her personal benefit in mind, without caring about the consequences or detrimental effects to the corporation or the plaintiff.

44. Said act was even more questionable due to the fact that the accounting system of the companies reveals that, allegedly, Ms. Mireddys González Castellanos and Mr. Ramón Ayala Rodríguez owe Cartel the amount of $16,670,405 and Los Cangris another $28,991. In spite of the existence of this important obligation in the corporate books, during the administration of the corporations by the González sisters, they made the aforementioned declarations of dividends without taking care of the unpaid balance of the above-described accounts receivable.

45. On April 15, 2024, without the consent of the owner of the companies, without the support, recommendation, or opinion of an expert approving the transaction, the González sisters transferred $30,967,719.35 from the Cartel account to Los Cangris, in order for both of the available bank balances of each of the entities to be the same.

46. On December 10, 2024, the money had to be returned.

8

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

CA2025CV00679 03/04/2025 02:18:14 pm Entry No. 1 Page 9 of 23

47. The defendants actions required Mr. Ayala's intervention. Even though the latter tried to lessen the effect of additional damages and repercussions, the defendants' actions constitute a serious violation of the fiduciary rights imposed by corporate legislation and the case law interpreting the same.

48. Another inconsiderate act constituting administrative neglect by the defendants is related to an account receivable in the amount of one million dollars ($1,000,000) against World Music Latin Corp. – related to Mr. Raphy Pina – which has been unpaid since the year 2020. In spite of the lack of payment of said debt, the administration of the González sisters made payments to World Music Latin Corp of at least $3,947,573.47, without deducting the owed balance in order to make the compensation that they had the responsibility to make in the best interest of the corporations.

49. Given the lack of documents and administrative disorder in which the corporations were left by the defendants, the plaintiffs had to reconstruct the accounting and the finances of the corporations in order to be able to identify the sources of income. During said reconstruction process, the plaintiffs discovered that [as to] all of the checks sent by the American Society of Composers, Authors and Publishers (known as the ASCAP) in the year 2024, the defendants had not made a deposit and the account receivable amounted to approximately $200,000.

50. During the financial and accounting reconstruction process, the plaintiffs also discovered that the boxes delivered during the transition process contained checks that had expired because the defendants never deposited them. Said checks were made in respect of royalty payments, some of them issued in the year 2008. As a result of said serious and contumacious neglect in the administration by the defendants, the plaintiffs lost thousands of dollars.

51. As to the fiscal and tax obligations to the State, the violations and omissions by the defendants reached superlative levels. Among other things, the defendants did not provide:

a. The information regarding the persons and companies to which they, on behalf of the companies, made compensatory payments to third parties [sic], during the time that the entities were under their control.

9

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

CA2025CV00679 03/04/2025 02:18:14 pm Entry No. 1 Page 10 of 23

    b. Information regarding the corresponding withholdings that should have been made and the exemptions provided in the event that the withholdings were not applicable.

    c. The human resource registries with the quarterlies of the Treasury, the IRS, the FICA, the FUTA and the Department of Labor.

52. The fiscal information that the defendants failed to responsibly keep and deliver to the new administration of the entity was and continues to be indispensable to send to each person to whom payments were made, among other things, the 480 forms, as required by the 2011 Internal Revenue Code.

53. After a lot of work and sacrifice, an "Audit Trail" report of the accounting system was obtained for each of the entities for the purpose of documenting the accounting system history at the time of the transition. Said exercise revealed the delay in the accounting, the lack of reconciliation during different periods, among other findings.

54. Furthermore, the management by the González sisters did not have an organized or complete accounting. There was no correct record of the withholdings or of the payments made in 2024. The 10% withheld from monthly payments as required by the Internal Revenue Code had not been remitted to the Department of the Treasury nor were the withholdings made correctly in respect of payments made.

55. Since the defendants did not provide said information nor delivered the complete registries of the companies, like they were obligated to do, they did not put the new management in a position from which it could provide the forms, in a timely manner, to the persons to whom payments were made, in order for the latter to be able to fully comply with the responsibility of filing their returns.

56. Said omissions and neglect in keeping fiscal registries, and in withholding the amounts required by law, has put the plaintiff corporations at risk of incurring fines, surcharges and penalties. It has also made it necessary for the new management to hastily incur substantial expenses to reconstruct what occurred during the administration by the defendants.

57. When the plaintiff came into control of the entities, the same was able to identify that the defendants did not administer the liquid capital of the companies correctly and adequately. The corporations' cash was deposited by the defendants in regular bank accounts with a miniscule yield of less than 1% which do not even offer

10

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

CA2025CV00679 03/04/2025 02:18:14 pm Entry No. 1 Page 11 of 23

a defense against or compensation for the effects of inflation. That level of financial neglect and recklessness in the administration of the resources of the corporations put the companies at risk of the effects [of] inflation and prevented them from obtaining an adequate and higher yield via a diversification of the investment which any prudent administrator would know they need to do.

58. As a result of said improper placement of corporate resources in accounts with a virtually non-existent yield, the new management of the entities was forced to look for products without a high risk, but with a higher financial yield, in order to obtain greater benefits for the companies.

B. DESTRUCTION OF EVIDENCE, LACK OF RECORDS, CONTRACTS AND CORPORATE DOCUMENTS

59. As part of the management transition process, the defendants were asked to produce the passwords of accounts, emails, clients, domains, internet, SURI, social security, contracts, among other access instruments for the ordinary and normal development of corporate matters and operations. They initially indicated that they did not handle said matters or that they did not have them.

60. In spite of the court judgment and agreement providing that they transfer the operational control over the corporations to the plaintiff, and step down from their administrative/supervisory positions, the defendants obstructed Mr. Ayala Rodríguez's access to all the documents, accounts, matters related to the administration of the companies, thereby affecting the stable operation of his business transactions and punctual compliance with the obligations to the State and to third parties.

61. An example of the frivolous and out of tune hindrance created by the defendants is the fact that Ms. Mireddys González Castellano did not authorize the American Express account to be changed in order to be in the name of Mr. Ayala Rodríguez, in spite of the fact that he was the new president of the entities. Said unjustified refusal, which was in clear disregard of and failure to comply with what was ordered, resulted in American Express requiring the immediate liquidation of a series of significant credit card payment obligations which the defendants failed to pay in order to then agree to close said corporate account.

11

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

62. Documents were found, in the trash, in the office of the corporations, which had not been provided neither physically nor electronically during the management transition process. Mail was also found, which had not been opened, for years, related to multiple aspects of the commercial operation.

63. Out of all of the violations, negligent acts, and acts with potentially criminal consequences, by the defendants, one of the most dramatic acts was the destruction and disappearance of corporate records and evidence between the years 2019 and 2024. The documents related to the operation of the business and artistic career of the plaintiff were not in the boxes that they delivered or the electronic corporate documents that have been accessed.

64. Furthermore, the defendants did not provide the documents stored in their emails, which they would use continuously, and without distinction or separation, for multiple corporate matters and also in relation to the plaintiff's music career. In spite of the fact that both they, and their legal representatives, had agreed to do so during the previous corporate lawsuit between the parties [sic].

65. The defendants, before the administrative transition of the companies ordered by the Court of First Instance – during the period between December 26-30, 2024 – erased or eliminated a significant number of emails related to the operation of the entities and plaintiff Ayala Rodríguez's career.

66. Before delivering the passwords of the different accounts and platform of the companies, on December 30, 2024, the defendants migrated all of the emails to multiple cell phones and other equipment, which they did not produce, nor have they notified the owners of the same or the reason for migrating all of that information.

67. On December 30, 2024, folders and wire transfers in the name of Mireddys González Castellanos were erased without notifying or providing any justification for doing so.

68. Between 2019-2024, several of the most significant events in the plaintiff's career took place, which resulted in copious financial benefits

12



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

for the entities, and as is to be expected, the emergence of obligations and responsibilities.

69. It is precisely during said period that the defendants entered into negotiations and sold the music catalogue created and developed by plaintiff Ayala Rodríguez throughout his life.

70. The González Castellanos defendants did not provide information to the new management as to past, present and future payments related to the sale of plaintiff Ayala Rodríguez's music catalogue, nor is there any explanation in the management letter submitted in the injunction case.

71. Furthermore, they did not provide the annual statements as to the payment of royalties that survived the sale, nor an analysis of compliance by the buyer with the payments that it had to make and whether, in fact, the same were made.

72. The defendants did not provide neither the appendices nor the emails between parties, promoters, attorneys who participated in the catalogue sale process. Furthermore, they did not deliver audits or inventories, assessments, revealing and corroborating the payments received, who received them, in what amount, who sold what, how, when and where future payments would be disbursed. Said absence of basic and fundamental information, about a transaction of such transcendental importance and monetary amount, constituted a seriously frivolous act that has caused the plaintiffs losses in the millions.

73. Codefendant Mireddys González Castellanos, taking advantage of her position in the corporation, authorized Mr. Rafael ("Raphy") Pina to represent the plaintiff in the catalogue sale. She gave Mr. Pina what seems to be absolute power over the transaction, including that he be the person to whom any matter related to the contract would be notified. This is so even though Mr. Pina was charged with a crime in Federal Court, a situation that was extremely complex and sensitive, which poses objectives that are different from the objectives of the plaintiff and the corporations.

74. Codefendant Mireddys González, absurdly abdicating all interference in matters related to the sale of the catalogue in favor of Mr. Pina, did not – as dictated by prudence and good business practices – hire and procured for the

13

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

companies legal representatives separate from the legal representatives of Mr. Pina, in order to responsibly and objectively evaluate the details of the transaction.

75. As a matter of fact, Mr. Pina delegated to his attorney, Mr. Juan Maldonado, who, as judicial notice may be taken, faced investigative proceedings and of a criminal nature during the same period, and was actually disbarred.

76. The defendants were the directors and officers of El Cartel. As such, they had an inescapable, non-transferable and non-delegable responsibility to look after and protect the best interests of the corporations and the artistic career of plaintiff Ayala Rodríguez. The defendants simply abdicated their responsibilities and disregarded their fiduciary duties.

77. In 2022, plaintiff Ayala Rodríguez did a tour including a series of concerts throughout the world titled "Última vuelta". The documents for identifying and corroborating the income, sponsorships, costs, disbursements and expenses related to this event were hidden by the defendants and were not delivered in their totality to the companies or to plaintiff Ayala Rodríguez.

78. Defendants González Castellanos stated under oath that the "Última vuelta" tour was managed by World Music Entertainment, an entity belonging to Mr. Rafael (Raphy) Pina. They indicated that they gave to the plaintiff what, allegedly, he gave them on the night before the last hearing of the previous court proceeding between the parties related to the injunctive action. The statement by the González sisters is not true. This is so because the process related to this tour was carried out in conjunction between the González Castellanos defendants and Mr. Rafael (Raphy) Pina and the agents or employees of the same.

79. The period of time during which the tour was developed coincides with the period during which Mr. Pina was incarcerated in federal prison. The documents provided by the defendants do not contain the accounting, contracts, the reconciliation, the breakdown of payments or sponsorships related to this tour. They also do not contain the receipts certifying the amounts retained by Mr. Pina to pay the Daddy Yankee entity through the defendants. Said items consist of multi-million dollar earnings. Given the lack of relevant documents to verify and corroborate

14

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

CA2025CV00679 03/04/2025 02:18:14 pm Entry No. 1 Page 15 of 23

what was done, received and disbursed correctly, resulting from this omission of the poor administration by the defendants, everything seems to suggest that the amounts were directly retained by Mr. Pina/Mr. Soldout/WME between 2022-2023 or by some other person and, as a result, the plaintiffs did not receive them.

80. The codefendants authorized Mr. Pina/Mr. Soldout/WME to practically pay themselves the amount of $27 million for alleged incurred expenses, without the existence of any verifiable evidence, accounting analysis, or audit that would reliably certify that, in fact, said million-dollar amount was owed in respect of expenses supposedly incurred in relation to the tour.

81. Codefendants also authorized that Mr. Pina/Mr. Soldout/WME, while serving time in federal prison, be paid a commission of 30% of what was earned during the "Última vuelta" tour, in spite of the fact that, for obvious reasons, he did not participate in the tour nor has it been verified or shown that any of his office personnel did.

82. Said lack of diligence and administrative carelessness by the defendants cost the plaintiff millions of dollars.

## C. DETERIORATION IN PHYSICAL FACILITIES OF OFFICES AND GENERAL INFRASTRUCTURE

83. In addition to failing to keep the corporate books organized, complete and up to date, destroying evidence, and hindering the transition, the defendants also failed to effectively manage and operate the offices of the entities.

84. When the plaintiff went to one of the offices of the entities, he found it abandoned, without electric power or internet service and covered in dirt and dust.

85. The physical condition of the offices showed a serious lack of maintenance. The area that protects the solar panels was deteriorated and completely rotten. The solar panels had been without service since December of 2023.

86. Inside of the office everything was completely disorganized and dirty.

87. The defendants were the directors and officers of the companies. As such, they had an inescapable, non-transferable and non-delegable personal responsibility to look after and protect the best interests of the corporations and their assets and offices. This is so especially

15

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

given the fact that the professional commitments of plaintiff Ayala Rodríguez, Daddy Yankee, required him to be abroad continuously, complying with artistic commitments throughout the world. The defendants basically failed to take care of the bare minimum.

88. The solar panel account is in the name of Ms. Ayeicha González and, as a result of her lack of cooperation in changing the titleholder, the plaintiffs were not able to carry out the applicable procedures.

89. Additionally, as a result of the acts and omissions of the defendants, plaintiff Ayala Rodríguez has experienced damages affecting the prestige and reputation developed by Daddy Yankee, resulting from his personal creations, including from before he was married, with a lot of work and huge sacrifices.

**D. ACTS TO THE PERSONAL DETRIMENT OF ARTIST DADDY YANKEE**

90. The disorganized and isolated information that was delivered by the defendants contained communications requesting services and public presentations by plaintiff Ayala Rodríguez in exchange for fees, in different markets such as Europe and the United States. The defendants never answered the requests nor did they inform the plaintiff. The disorganized, unprofessional and irresponsible management by the defendants, of matters related to the career of Ayala Rodríguez, resulted in loss of income and harm to his image and reputation.

91. The defamatory campaign promoted by the codefendants and their agents and legal representatives, with their authorization, from the moment that divorce proceedings and the corporation injunction were filed, and which continues up to this day, has damaged the career, good name and personal prestige of the plaintiff as one of the most important Latin music figures in the entire world.

92. The defamatory campaign developed by the defendants has also affected Ayala Rodríguez's personal tranquility and spirits. The disappointment and frustration of having been betrayed in such a way, by those who make up his immediate family and are the mother and aunt of his son and daughter, have caused the plaintiff serious emotional distress, discomfort and serious concerns.

16

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

93. In addition, the deceitful acts, distorted narratives promoted by the defendants as to the operations of the music career of the plaintiff and as to him personally, and the complete breakup that this has caused of the personal ties that used to exist, have made clear and evident that it would be impracticable for the plaintiff to continue having a professional relationship with the codefendants.

94. The acts of the defendants and their legal representatives, in disregard of the beliefs, faith, and the development of the career of Ramón Ayala as "Daddy Yankee" with a different focus, has caused the plaintiff serious emotional distress, suffering and serious concerns, in relation to his impeccable career, good name and reputation.

## IV. <u>FIRST CAUSE OF ACTION</u>

95. The defendant's acts while working as officers of El Cartel and Los Cangris, before and during the process of transition to a new administration, was irresponsible, intentionally inconsiderate, in bad [sic] and careless. Acting in such a way violates the fundamental fiduciary obligation of all corporate officers to act prudently and diligently in the best interest of the companies.

96. The defendants have knowingly concealed information, and destroyed or disappeared documents, affecting the administrative transition of the companies and the normal development of the operations of the entities.

97. Defendant Mireddys González attempted to mold the corporate finances to her personal interests, violating her fiduciary duty, during the period when she had already decided to file for divorce, and she intended to unilaterally liquidate the community marital property.

98. The careless and in bad faith acts by the defendants have affected the artistic career of the plaintiff, making it impossible to receive the income to which he had a right as an artist, singer and composer, diminishing his earnings by diverting funds and failing to verify expenses and disbursements.

99. The defendants have mocked the trust that Mr. Ayala Rodríguez delegated to them to act in the best interest of the corporations and the welfare of his personal

17

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

career and businesses, putting their interests and selfish and personal concerns before the interests of the company and Mr. Ayala Rodríguez.

100.  The General Corporations Act of 2009 provides that "the authority and powers given to all organized corporations under the laws of Puerto Rico shall be exercised for the benefit of the shareholders of the corporation and for the sound management of their business transactions and matters, as well as for the promotion of their objectives and purposes." Law No. 164-2009 (14 LPRA sec. 3523 et seq.). The defendants have ignored said rule of law by wasting the resources of the companies and injuring the best professional interests of plaintiff Ayala Rodríguez.

101.  For the purpose of guaranteeing the best performance by the administrators of a corporation, the General Corporations Act of 2009, in articles 4.031 and 4.042, establishes the duties and obligations to be complied with by directors and officers to make sure corporations are administered responsibly.

102.  Together, the three articles mentioned above establish the main responsibilities to be observed by the officers and directors of a corporation, also known as fiduciary duties. These are: (1) the obligation to act within the boundaries of their authority, (2) the duty of diligence and (3) the duty of loyalty. See *Rivera Sanfeliz v. Jta. Dir. FirstBank*, 193 DPR 38 (2015).

103.  The duty of diligence is established in article 4.03 of the Corporations Act requiring administrators to act as follows:

> Directors and officers are obligated to devote to the matters of the corporation, and to the performance of their duties, the attention and care which, in a similar position and in analogous circumstances, would be devoted to them by a responsible and competent director or officer when exercising, in good faith, their commercial judgment or better judgment as to nonprofit corporations. Only gross negligence in the performance of the obligations and duties mentioned above shall result in liability.

104.  The purpose of El Cartel and Los Cangris, and the reason for which they were created, was the protection and development of the artistic career of the plaintiff and his compositions. The irresponsible administration, and open conflict with the best interests of the artistic career of plaintiff Ayala Rodríguez, of defendants Mireddys and Ayeicha González Castellanos, have resulted in their insuperable adversative

---

[1] Id. § 3563.
[2] Id. § 3564.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

position in relation to him, causing him personal and professional harm and undermining him personally and his full artistic development.

105. The defendants actions have been reckless, malicious, disloyal and in open violation of the fiduciary obligations imposed on them by articles 2.03, 4.03 and 4.04 of the General Corporations Act of 2011, all of which has caused financial harm and copious losses to the plaintiffs in an amount of no less than $50,000,000.

## V. SECOND CAUSE OF ACTION

106. As part of their fiduciary duties, the administrators of a corporation have a duty to guarantee the existence of an adequate corporate information and report system. *In re McDonald's Corp. S'holder Derivative Litig.*, 289 A.3d 343 (Del. Ch. 2023). When attributing liability to the  directors of a corporation for lack of supervision, two criteria must be considered: (1) whether the directors did not in any way implement an information, report and control system, or (2) whether the systems or controls were implemented, but they did not monitor or supervise them. *In re McDonald's Corp. S'holder Derivative Litig., supra.*

107. The standard of liability for lack of supervision stems from a failure by the directors to act responsibly and in good faith. A director acts in bad faith when he or she acts based on a purpose that is different from the best interests of the corporation or if the fiduciary intentionally fails to act and neglects what he or she is supposed to do in spite of knowing that he or she must do it. *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362 (Del. Ch. 2006).

108. The defendants were asked to produce all physical and digital records, in relation to the accounting and legal matters of the corporations, and they indicated that they did not know anything or they did not have them and, lastly, that they had disposed of them and disappeared them.

109. Also, when they were asked to produce a copy of all current contracts of the corporations, records of decrees, all contracts and obligations, they said that they did not have them.

19

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

110. Furthermore, when they were specifically asked to produce a copy of the sale record of the music catalogue of the defendant [sic], they also indicated that they did not have it.

111. With respect to the financial analyses that they had supposedly commissioned, when they unilaterally improperly attempted to withdraw $100 million dollars from the corporate accounts, they also indicated that they did not have them.

112. The defendants, as corporate officials, in their capacity as directors and officers, had the obligation to set up an internal control system in the companies, and develop an adequate supervision of the operations and of the transactions that were carried out to protect the best interests of the companies and detect and deal with any irregularity that may arise. The defendants did not do so, failing to comply with their duty to the entities, which caused them harm and copious losses, and affected plaintiff Ayala Rodríguez personally as well as his professional career.

113. The defendants' failure to establish, in accordance with their obligation, an accounting and financial system that would make viable the operation of a complex multi-million dollar business, such as the one developed by the plaintiff corporations, has made it necessary to reconstruct the past economic history of the companies, requiring huge sacrifices and costs, all of which has resulted in the disbursement of a large amount of resources, as a result of the bad administration by the defendants.

114. In spite of the efforts made by the new corporate management to reconstruct and identify the history of the past operations of the companies, inevitably there are transactions and events that shall not be identified or shall not be completely identified, as a result of the tortious omissions and actions of the defendants. This has resulted in the plaintiffs incurring expenses that should have never been incurred and being exposed to risks with serious monetary implications, equally unnecessary and unjustified.

115. The lack of relevant information and the destruction of evidence and numerous corporate electronic records, in relation to a decisive period for the plaintiff, have caused damages in an amount of no less than $50,000,000.

20

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

CA2025CV00679 03/04/2025 02:18:14 pm Entry No. 1 Page 21 of 23

## VI. THIRD CAUSE OF ACTION

116. The Corporations Act of 2009 imposes on corporate officers a series of demands in relation to the operation of corporate entities, which the defendants did not observe while acting as officers and directors of El Cartel and Los Cangris.

117. Defendant Mireddys González Castellanos, in performing her position as president and member of the board of directors of the corporations, failed to comply with her corporate obligations when she did not act in good faith when the plaintiff, who is a shareholder of the corporation, requested on multiple occasions that she provide him with access to the corporate books. They hindered and did not allow the plaintiff to gain access to essential information and documents related to his accounts, brands, intellectual property, contracts, accounting and operations registries, affecting his right as a shareholder and making impossible the normal development of the artistic career of his career [sic].

118. Furthermore, defendants Mireddys and Ayeicha obtained and retained for themselves earnings and benefits that belonged to the corporations.

119. The defendants did not take steps to receive adequate advice for the development of the operations of the companies.

120. The defendants also failed to comply with their duty of loyalty when they hindered and refused to give up the control over the corporations even after the Court of First Instance, during the previous injunction lawsuit between the parties, determined that they had to deliver the control over the corporation.

121. The plaintiffs did not comply with the requirements of the General Corporations Act to structurally schedule meetings of directors and shareholders, in order to select corporate administrators, and did not keep records or minutes containing the transactional history of the corporations.

122. The inattentions and violations of the rights of the plaintiff became more serious when the defendants, in spite of having been unauthorized to interfere and removed from their positions in the companies, continued impeding and exercising control over the matters and operations of the company, thereby usurping duties and positions that were no longer theirs.

21

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

CA2025CV00679 03/04/2025 02:18:14 pm Entry No. 1 Page 22 of 23

123. By not calling to or holding annual meetings of shareholders, the defendants intended to extend the mandate as to the delegation of authority given to them by the plaintiff, all of it in violation of and disregard for corporate legislation. In order to assert his rights, Mr. Ayala Rodríguez has incurred and continues to incur copious expenses.

124. By repeatedly acting frivolously and to the detriment of the owner, who was also the main asset of the entities as an artist, the defendants have caused serious damages.

125. In addition, the defamatory campaign carried out by the defendants, personally and via authorized third parties, against the good name, reputation, artistic career, spirituality, have caused emotional distress and suffering which, in conjunction with what is provided in allegation 124, have caused damages in an amount of no less than $150,000,000.

## PRAYER

**WHEREFORE**, it is requested that the Honorable Court find in favor of the Plaintiffs and order the plaintiffs [sic] to pay indemnification to plaintiffs El Cartel, Los Cangris, and Ramón L. Ayala Rodríguez, in an amount of no less than $250,000,000, plus costs, interests and attorneys' fees, and any other relief that would assist the plaintiffs.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, today, March 4, 2025.

Attorneys for Plaintiff Ramon L. Ayala Rodríguez

**s/CARLOS E. DÍAZ OLIVO (RUA 7839)**
San Ignacio Avenue 1395
Altamesa, San Juan, Puerto Rico 00921
Tel. (787) 314-6000, (787) 307-4560
e-mail: carlosdiazolivo@yahoo.com

**LEXTRATEGIES LLC**
285 Eleonor Roosevelt
San Juan PR 00918
Tel. 787-504-5000
e-mail: lextrategiasllc@gmail.com

**s/Anabelle Torres Colberg**
(RUA NO: 16841)

22

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

**COLBERG LAW, LLC**
285 Eleanor Roosevelt, Urb. Roosevelt
San Juan, PR 00918
Tel.: 787-282-7314; Fax: 787-754-3957
Email: hcblawoffice@hotmail.com

**s/HEILEENE COLBERG BIRRIEL**
(RUA NO 11723)

Attorneys for CARTEL RECORDS AND LOS CANGRIS

**BECKER/VISSEPO**
VIG TOWER, 1225
Ponce De León Ave., Suite 1102
San Juan, PR 00907
Tel. (787) 633-9601
E-mail: jp@vissepolaw.com

**s/JEAN PAUL VISSEPO GARRIGA**
(RUA No. 14,482)

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.