## IN THE UNITED STATES DISTRIC COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EL CARTEL RECORDS, INC., et al | CIVIL NO. 25-cv-1399 |
| Plaintiff(s) | |
| vs. | Computer Fraud and Abuse Act – 18 USC §1030, Injunctive Relief; Stored Communications Act – 18 USC §§ 2701 & 2707, Injunctive Relief |
| MIREDDYS GONZALEZ-CASTELLANOS, et al | |
| Defendant(s) | |

### BRIEF IN SUPPORT OF MOTION TO DISMISS OR TO STAY PROCEEDINGS PURSUANT TO ABSTENTION DOCTRINE ESTABLISHED IN *COLORADO RIVERS*

**TO THE HONORABLE COURT:**

**NOW COMES** Defendants, Mireddys González-Castellanos ("Mireddys") and Ayeicha González-Castellanos ("Ayeicha") (jointly "Defendants"), through the undersigned attorneys, who respectfully states and prays:

### *Introduction and Applicable Legal Framework*

1.      During the preliminary injunction hearing held on August 14, 2025, this Honorable Court requested Defendants to file a brief discussing further the applicability of the abstention doctrine established in *Colorado Rivers Water Conservation District* v. *United States,* 424 U.S. 800 (1976) ("*Colorado Rivers*").

2.      Pursuant to the abstention doctrine established in *Colorado Rivers*, abstention can be warranted based on "considerations of '(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id*., at 817.

3.      "[A] federal court may abstain from exercising its jurisdiction in certain instances where there is a parallel state court proceeding, 'based on considerations of wise judicial

1

administration' that counsel against duplicative lawsuits." *Glassie* v. *Doucette*, 55 F.4th 58, 63 (1st Cir. 2022).

4.      The First Circuit has identified the following non-exhaustive factors that should be considered when determining to dismiss or stay a case under the abstention doctrine established in *Colorado Rivers*: "(1) whether any court has jurisdiction over a res; (2) the geographical inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal or state law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious nature of the federal claim; and (8) respect to the principles underlying removal jurisdiction." *Bacardi Intern. Ltd*. v. *Suarez & Co., Inc*., 719 F.3d 1, 15, n. 17 (1st Cir. 2013) .

5.      Factors listed as number 1, 2, 5 and 8 do not apply to this case and, therefore, will not be discussed.

6.      The list of factors is non-exhaustive, "is not a 'litmus test' and 'must remain a discretionary tool'." *Nazario-Lugo* v. *Caribevision Holdings, Inc*., 670 F.3d 109, 115 (1st Cir. 2012).  In addition, "[t]he weight to be given any given factor depends on the circumstances at hand." *Id*.

### ***Parallel Cases***

During the preliminary injunction hearing, Plaintiffs argued that the case of *Ramón L. Ayala Rodríguez, a.k.a. Daddy Yankee, personally and as the representative of El Cartel and Los Cangris* v. *Mireddys González Castellanos et al.*, Civil Case CA2025CV00679, before the Puerto Rico Court of First Instance, Carolina Part ("Carloina Case" or "Case CA2025CV00679"), is not a parallel case to the instant one.  However, as it will be discussed in this brief, the parallelism between the Carolina Case and the instant one is clear.

2

Case CA2025CV006797 is a corporate **derivative** action brought by Ramón Ayala Rodríguez ("Ramón") as the representative of El Cartel Records, Inc. and Los Cangris, Inc. ("the Corporations"). *See, ¶1-2 of Dkt. 16-4.* Plaintiffs in the instant case are El Cartel Records, Inc., and Los Cangris, Inc. *See, ¶9-10 of Dkt. 1.* Defendants in the Carolina Case and the instant one are Mireddys González Castellanos and Ayeicha González Castellanos. *See,¶4-5 of Dkt. 16-4 and ¶1-12 of Dkt. 1.* Therefore, **both cases have identical Plaintiffs and Defendants**.

Both cases were filed by the Corporations or by Ramón as their representative. In this case Plaintiffs included similar, not to say the same, factual allegations that they included in Case CA2025CV00679. The following table illustrates the obvious parallelism between the factual allegations included in the two complaints:[1]

| Allegations in the Carolina Case[2] | Allegations in the Instant Case[3] |
| --- | --- |
| 10. When [Ramon] created El Cartel Recods, Inc. and Los Cangris, Inc., he was married to defendant Mireddys González Castellanos.<br><br>11. For the purpose of concentrating on developing his artistic work and thereby generate income that would result in benefit for the companies, via a constant flow of income from his participations and creations, Ramón placed his trust in his wife at the time, Mireddys. She was assigned the task of handling the matters and administration of both Corporations.<br><br>12. Mireddys recruited her sister Ayeicha in relation to the task that she was assigned to work as director and officer of the Corporations. | 16. To allow him to focus on his artistic endeavors and creative output, Ramón entrusted the day-to-day management of the Corporations to his then-wife, Mireddys. While managing the Corporations, Mireddys appointed her sister -Ayeicha- as secretary and treasurer of both Corporations. |

---

[1] Reference is made only to some of the similar allegations, mainly the ones relevant to the matter discussed in this Brief and others that illustrate the period of the alleged facts.

[2] The Complaint is found in Dkt. 16-4. The number indicates the paragraph of the Complaint that include the allegation.

[3] The Complaint if found in Dkt. 1. The number indicates the paragraph of the Complaint that include the allegation.

| | |
|---|---|
| 14. Defendants proceeded to accumulate for themselves greater power that the one authorized, and together made negligent and selfish decisions that harmed both the companies and Ramón, in his personal capacity and as an artist. | 17. After receiving delegated authority from Ramón, Mireddys and Ayeicha began to exercise control over the Corporations far beyond the scope of what had been authorized. Rather than acting as responsible stewards of the companies, Defendants used their positions to centralize power, disregarding their fiduciary duties and causing substantial harm to the Corporations. |
| 15. Defendants did not provide a precise account of their duties, disregarded formalities and requirements of corporate laws, made irresponsible financial decisions, managed the accounting negligently, did not issue calls, kept minutes, records or registries of important transactions, did not hold assemblies or meetings, and improperly alienated Ramón from the making of decisions. | 18. Defendants' mismanagement was extensive. The defendants failed to keep accurate financial records, ignored essential corporate formalities, and neglected legal obligations. They made questionable financial decisions, mismanaged the company's books, and failed to issue required minutes, all to the detriment of the Corporations. |
| 19. At the beginning of December of 2024, under Article 7.10 of the General Corporations Act of 2009, Ramón sent a communication to Mireddys, requesting access to a series of documents regarding El Cartel and Los Cangris. He also asked that, during the adjudication of the divorce proceeding, all business or financial decisions related to El Cartel, Los Cangris, Daddy Yankee, etc., be consulted with and previously authorized by him.[4] | 20. On November 30, 2024, Ramón invoked his statutory rights under P.R. Laws Ann. tit. 14, §3650 and sent a formal letter to Mireddys demanding access to key documents related to El Cartel and associated entities. In that same letter, Ramón made it clear that any further financial or business decisions involving El Cartel must be subject to his prior review and authorization.[5] |
| 21. Mireddys answered the letter stating that Ramón did not have a legitimate purpose to request financial information of the Corporations, nor of the commercial/musical endeavors of the Corporations. | 21. Meanwhile, on December 5, 2024, Mireddys replied to the November 30, 2024 letter. Rather than comply, however, she questioned the legitimacy of Ramón's request claiming he lacked a proper purpose for seeking the financial records. |

---

[4] Art. 7.10 is the equivalent to P.R. Laws Ann. tit. 14, §3650.
[5] P.R. Laws Ann. tit. 14, §3650 is the equivalent to Art. 7.10.

| | |
|---|---|
| 38. On December 12, 2024, Defendants carried out a bank transfer withdrawing, according to obtained information, twenty million dollars ($20,000,000) from the bank account of Los Cangris and eighty million dollars ($80,000,000) form the bank account of El Cartel.<br><br>46. The defendants actions required Ramón's intervention. Even though the latter tried to lessen the effect of additional damages and repercussions, the defendants' actions constitute a serious violation of the fiduciary rights imposed by corporate legislation and the case law interpreting the same. | 26. Then, on or about December 11, 2024, Mireddys attempted a brazen and unauthorized transfer of $100 million from the Corporations' bank accounts into personal accounts separately held by herself and Ramón.<br><br>27. Fortunately, due to swift intervention by Ramón, the transactions transferring the funds were reversed before the funds were lost. |
| 30. As a result of the Defendants' refusal to provide information regarding the operation and administration of the matters of the Corporations, Ramón filed against the Defendants injunctive actions in the Court of First Instance, Court of San Juan, SJ2024CV11465 and SJ2024CV11466, which were consolidated in the first one.<br><br>31. Vía judgment containing an agreement between the parties, in December of 2024 the Court of First Instance issued a decision transferring the control over the direction and administration of the matters of the Corporations to Ramón and ordered the resignation from all of the administrative and directional positions of Defendants. | 28. Realizing the need for judicial intervention to regain control and protect the Corporations, Ramón filed for injunctive relief in the Court of the Commonwealth of Puerto Rico. On December 20, 2024, the parties informed the Court that they had reached an agreement: Ramón would assume control over the Corporations. The Court acknowledged the agreement on the record that same day, noting its intent to formalize the arrangement in a written judgment. Then, on December 26, 2024, pursuant to the parties' stipulation, the Court issued a final judgment officially transferring control of El Cartel and Los Cangris to Ramón. |

| | |
|---|---|
| 32. In the issued judgment, the Court ordered Defendants to collaborate and assist in an orderly and proper transition to the new management of the Corporations. In spite of the foregoing, the Defendants failed to fully comply with the provision of information and delivery of documents that they had in their possession and to which they otherwise had access and so it was necessary to request to and obtain from the Court orders for compliance with the obligation that they had agreed to.<br><br>33. Defendants delivered information and documents in snippets. Lastly, they unilaterally signed a letter indicating to the Court that they had provided all of the information for an orderly administrative transfer and the normal and proper continuation of the Corporations. | 29. Regardless of the mutual agreement, once it became clear that Ramón would regain control of the Corporations, Defendants did not accept their removal with grace or accountability. Instead, they jointly chose to obstruct it -delivering incomplete records in a deliberate act of retaliation and self-preservation. |
| 60. In spite of the court judgment and agreement providing that they transfer the operational control over the Corporations to Ramón, and step down from their administrative/supervisory positions, Defendants obstructed Ramón's access to all the documents, accounts, matters related to the administration of the companies, thereby affecting the stable operation of his business transactions and punctual compliance with the obligations to the State and to third parties.<br><br>63. Out of all of the violations, negligent acts, and acts with potentially criminal consequences by the Defendants, one of the most dramatic acts was the destruction and disappearance of corporate records and evidence between the years 2019 and 2024. The documents related to the operation of the business and artistic career of Ramón were not in the boxes that they delivered or the electronic corporate documents that have been accessed. | 35. Acting without any legal authority, having been stripped of their positions, and with total disregard of their fiduciary duties, they deleted a sweeping collection of records… Only after deletions were completed did Defendants finally hand over the mireddys@cartelrecords.com password to Driven.<br><br>38. By deleting records and emails, Defendants violated their duty to preserve corporate information, causing the loss of valuable communications and records essential to the integrity of the Corporations.<br><br>48. Upon examination of mireddys@cartelrecords.com, on or about December 30, 2024, after 7:00pm, Driven discovered that **all sent emails dated between July 23, 2020 and December 29, 2024 had been deleted**.<br><br>49. On or about January 28, 2024, further forensic review by Driven identified additional deletions: namely, **that on December 30, 2024, before 7:00pm, a series of files has also** |

65. **Defendants**, before the administrative transition of the Corporations ordered by the Court of First Instance – **during the period between December 26-30, 2024 – erased or eliminated significant number of emails related to the operation of the entities and Ramón's career**.

66. Before delivering the passwords of the different accounts and platform of the Corporations, on December 30, 2024, Defendants migrated all of the emails to multiple cell phones and other equipment, which they did not produce, nor have they notified the owners of the same or the reason for migrating all of that information.

67. **On December 30, 2024, folders and wire transfers in the name of Mireddys González Castellanos were erased without notifying or providing any justification for doing so**.

68. Between 2019-2024, several of the most significant events in Ramón Carrer took place, which resulted in copious financial benefits for the Corporations, and as is to be expected, the emergence of obligations and responsibilities.

69. It is precisely during said period that Defendants entered into negotiations an **sold the music catalogue created and developed by Ramón throughout his life**.

77. **In 2022, Ramón did a tour including a series of concerts throughout the world titled 'Ultima Vuelta'**. The documents for identifying and corroborating the income, sponsorships, costs, disbursements and expenses related to this event were hidden by the Defendants and were not delivered in their totality to the Corporations or to Ramón.

96. Defendants have knowingly concealed information, and destroyed or disappeared documents, affecting the administrative

been erased from the mireddys@cartelrecords.com account.

52. This period includes pivotal events, notably in 2021, when the Corporations participated in **the sale of Daddy Yankee's music catalog and, in 2022, El Cartel played a central role in the world tour known as *La Ultima Vuelta World Tour***.

75. Prior to 7:00pm on December 30,2024, Defendants intentionally accessed account mireddys@cartelrecords.com without authorization and deleted emails and files stored therein.

| | |
|---|---|
| transition of the companies and the normal development of the operations of the entities.<br><br>108. Defendants were asked to produce all physical and digital records, in relation to the accounting and legal matters of the corporations, and they indicated that they did not know anything or they did not have them and, lastly, that they had disposed of them and disappeared them. | |
| 56. Defendants' omissions and neglect in keeping fiscal registries, and withholding the amounts required by law, has put the Corporations at risk of incurring fines, surcharges and penalties. **It has also made it necessary for the new management to hastily incur substantial expenses to reconstruct what occurred during the administration by the Defendants**. | 62. Since January 2025, **Plaintiffs have been forced to expend significant resources addressing the fallout from the deletions**. These efforts include conducting internal investigations, performing forensic analyses, assessing operational damage, and attempting to recover lost information. Additional expenses have been incurred for legal services, regulatory compliance and, where applicable, payment of penalties and remedial measures. The companies have also devoted substantial time and funds contacting third parties to reconstruct lost data – efforts which, to date, have been largely unsuccessful. These unexpected burdens diverted time, personnel, and capital away from the Corporations' core business operations and caused lasting disruption to the company's affairs. |
| Based on those allegations, among other, Ramón and the Corporations request to be compensated for damages allegedly suffered in the amount of $250,000,000.00. *See*, ¶105, 115 and 125. | Based on those allegations, the Corporations request to be compensated for damages allegedly suffered and punitive damages in an amount of $6,000,000.00 each. *See*, ¶72, 77 and 86 |

In the instant case the Corporations included similar, not to say the same, factual allegations that they included in Case CA2025CV00679. In both cases Plaintiffs claim that, after an agreement was reached in the consolidated cases before the Court of First Instance, San Juan Part, but before handing all the passwords of the email accounts or platforms, Defendants deleted certain emails

and folders that included information about two events that occurred between the years 2019 and 2024: the sale of the music catalog and "La Ultima Vuelta Tour".

Consequently, it is evident that Case CA2025CV00679 includes same factual allegations thar are also made in the instant case and, therefore, there is a parallel state court proceeding that was filed first in which the same facts alleged in the instant case are being litigated.

### _The desirability of avoiding piecemeal litigation_

In both cases Plaintiffs are requesting compensation for damages that were allegedly caused by the **same** deletion of the **same** email and folders deleted by Defendants. Accordingly, Plaintiffs are requesting in both cases to be compensated for the exact same damages.

Inasmuch the deleted emails and folders object of this case are the same as those that are object of Case CA20205CV00679, the evidence that Plaintiffs will use in both cases will be the same. Moreover, the discovery to be conducted will also be the same.

The questions this Honorable Court should consider in evaluating whether to abstain from exercising its jurisdiction are, among others:

- How is this case affected if in Case CA2025CV00679 it is determined that there was no wrongdoing in the deletion of emails and folders?

- How is this case affected if in Case CA2025CV00679 it is determined that Defendants were authorized to access the mireddys@cartelrecords.com email account when the email and folders were deleted?

- How is this case affected if in Case CA2025CV00679 it is determined that the emails and folders that were deleted included personal information of Defendants?

- How is this case affected if in Case CA2025CV00679 it is determined that Plaintiffs had access to the mireddys@cartelrecords.com email account days before Defendants handed

the password because Plaintiffs were already the administrator ("super admin") of the Google Workspace account?

- How is this case affected if in Case CA2025CV00679 it is determined that there is no causal relationship between the deletion of emails and damages allegedly suffered by Plaintiffs?

- How is this case affected if in Case CA2025CV00679 it is determined that the Defendants are protected by the business judgment rule established in the applicable local law?

- How is this case affected if in Case CA2025CV00679 it is determined that Plaintiffs should be compensated for damages allegedly suffered and the specific amount to be paid by Defendants is established?

Defendants posit that all the scenarios contemplated in these questions identify issues of fact on which this Honorable Court and the Puerto Rico Court can issue conflicting determinations. Accordingly, this Honorable Court should abstain from exercising its jurisdiction to avoid piecemeal litigation and the possibility of incompatible determination issued in Case CA2025CV00679 and the instant one.

### _The order in which the forums obtained jurisdiction_

This factor "is not a mechanical concept automatically favoring the party who files first, but rather a concept that favors the case that is more advanced at the time the _Colorado Rivers_ balancing is done." _Jiménez_ v. _Rodríguez-Pagán_, 597 F.3 18, 30-31 (1st Cir. 2010). Usually, this factor is evaluated in the scenario in which one case is filed by one party and the other case is filed by the other party. However, **here both parallel cases were filed by the same party**.

Nevertheless, this Honorable Court can take judicial notice that in Case CA2025CV00679 Defendants already filed an answer to the complaint and a counterclaim, notified written

interrogatories and requests for production of documents, and notified the taking of a deposition. In the instant case part of Defendants' motion to dismiss is still pending resolution. Consequently, Case CA2025CV00679 is more advanced than the instant case.

### *The adequacy of the state forum to protect the parties' interests*

The Puerto Rico Court is a competent forum adequately equipped to protect the parties' interests. It should be noted that Plaintiffs have filed four (4) different cases in local court, including Case CA2025CV00679. Therefore, Plaintiffs cannot question the adequacy of the Puerto Rico Courts as a forum adequately equipped to protect the parties' interests.

Specifically, the local court is equipped to issue injunctive orders, to allow complete discovery proceeding and to preside over a just evidentiary hearing pursuant to the principles of due process of law. Therefore, considerations of wise judicial administration counsel against duplicative lawsuits and favors that this Honorable Court abstain from exercising its jurisdiction in the instant case.

### *The vexatious nature of the federal claim*

This factor was discussed in Defendants' *Motion to Dismiss* at Dkt. 16.

### *Defendants' Fiduciary Duties*

During the preliminary injunction hearing this Honorable Court inquired whether Mireddys' fiduciary duties towards Plaintiffs ended on December 20, 2024, when she transferred the management control of the corporations to Ramón. The undersigned counsels argued that Mireddys, as co-owner of Plaintiffs, still has fiduciary duties towards the corporations after December 20, 2024. We elaborate.

Art. 4.04 of the Puerto Rico General Corporations Act, P.R. Laws Ann. tit. 14, §3564, states that, "[w]henever the directors, officers and majority stockholders have personal interests in

11

matters affecting the corporations, they shall be subject to a duty of loyalty which bounds them to act fairly in relation to corporate issues." As such, under local law the majority owners of a corporation have the exact and same fiduciary duty of loyalty as directors and officers.

Plaintiffs were incorporated while Mireddys and Ramón were married under the community property regime. Therefore, both are equal owners of the common property with equal rights and obligations.  Common property includes businesses created or founded by either spouse during the term of the partnership, at the expense of joint property.  *See*, P.R. Laws Ann. tit. 31, §9651 and §6965(e). Consequently, Mireddys and Ramón are both owners of Plaintiffs, until the common property is divided among them. In addition, it is presumed that they are equal co-owners and, therefore, they are both deemed majority owners for purposes of the fiduciary duty of loyalty.

See, *In re Arthur Treacher's Fish & Chips of Ft. Lauderdale, Inc.,* 386 A.2d 1162, 1166 (Del. Ch. 1978), which, in the context of a 50-50 joint venture, rules that each partner owed the other a fiduciary duty of utmost good faith, fairness and honesty.

The fiduciary duty of loyalty implies that when the owners of the corporation have personal interests in matters affecting the corporation, they shall be subject to a duty of loyalty which obliges them to act fairly in relation to corporate affairs. *Multinational Life Insurance Company*, v. *Benítez Rivera*, 193 DPR 67, 78 (2015). Accordingly, the duty of loyalty includes the obligation to protect the corporation's interests and the obligation to abstain from conduct that would harm the entity's interests. It is understood that the duty of loyalty is violated when the director, officer or owner acts with a conflict of interest or acts in bad faith, among other scenarios.  Díaz Olivo, *Corporaciones, Tratado Sobre Derecho Corporativo*, 2nd ed., 2018, §7.04(A)(2), p. 211.

Under Delaware law,[6] the "duty of loyalty includes a requirement to act in good faith, which is 'a subsidiary element, i.e., a condition of the fundamental duty of loyalty." *Metro Storage International LLC* v. *Harron*, 275 A.3d 810, 843 (Del. Ch. 2022). In addition, owners, directors and officials "are not permitted to use their position of trust and confidence to further their private interests." *Id*., quoting *Guth* v. *Loft, Inc*., 5 A.2d 503, 510 (Del. 1939).

Consequently, Mireddys duty of loyalty toward Plaintiffs did not end when she transferred the management of the corporations to Ramón because she still is a majority owner. Therefore, the factual allegations included in the instant case claiming that Mireddys deleted certain emails and folders from the mireddys@cartelrecords.com email account before handing the password to Driven, can be considered, evaluated and adjudged in Case CA2025CV00679 under the applicable local corporate law that governs the fiduciary duties imposed upon owners of a corporation.

### **_Conclusion_**

This Honorable Court already issued a consented order to protect the information storage in Defendants' personal devices and other orders directed to Yahoo and Gmail. The parties have been complying with the consented order, and the downloading of all stored information is to be concluded during the next couple of days.

Because the information stored in Defendants personal devices is already secured, all other factual determinations pending resolution can be left to be determined by the parallel case being litigated before the Puerto Rico Court -CA2025CV00679-. No prejudice will be caused to any of the parties; to the contrary, by abstaining from exercising its jurisdiction (i) duplicative lawsuits will be avoided, (ii) conflicting factual determination issued by the Puerto Rico Court and this

---

[6] Puerto Rico corporate law was modeled after Delaware corporate law. Therefore, courts turn to Delaware corporate law as guidance when interpreting Puerto Rico corporate law. *Wiley* v. *Stipes*, 595 F.Supp.2d 179, 185 (DPR 2009), citing *Gonzalez Turul* v. *Rogatol Distributors, Inc*., 951 F.2d 1, 3 (1st Cir. 1991).

Honorable Court will be avoided, (iii) duplicative discovery proceedings will be avoided, (iv) conservation of judicial resources will be obtained and (v) comprehensive disposition of litigation will be procured.

Consequently, it is respectfully requested that this Honorable Court abstain from exercising its jurisdiction pursuant to the abstention doctrine established in *Colorado Rivers*, and dismiss this case or, alternatively, stay the proceedings until a final and unappealable Judgment is issued in Case CA2025CV00679.

**WHEREFORE**, it is respectfully requested from this Honorable Court to consider this Brief and GRANT Defendants' request to dismiss this case or stay the proceeding pursuant to the abstention doctrine established in *Colorado Rivers*.

## CERTIFICATE OF SERVICE

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

**RESPECTFULLY SUBMITTED.**

**[SIGNATURES IN NEXT PAGE]**

In Guaynabo, Puerto Rico, this August 25, 2025.

**COUNSELS FOR MIREDDYS**:

| | |
|---|---|
| **Marichal Hernández LLC**<br>1510 F.D Roosevelt Avenue, Fl. 9<br>Guaynabo, PR, 00968-2620<br>PO Box 190095<br>San Juan, PR 00919-0095<br>Tel. 787.753.1565<br>Fax. 787.763.1704<br><br>/s/**Rafael Santiago-Rosa**<br>USDC NO.: 211705<br>rsantiago@mhlex.com<br><br>/s/**José R. Negrón-Fernández**<br>José R. Negrón-Fernández<br>USDC P.R. NO. 212713<br><br>/s/**Miguel A. Rangel-Rosas**<br>**U**SDC NO.: 218601<br>mrangel@mhlex.com | **Pedro J. Rivera Rivera, Law Office**<br>**USDC # 228702**<br>Edificio Triple S Plaza<br>1510 Ave. FD Roosevelt<br>Ste 9B-1<br>Guaynabo, PR 00968<br><br>Mobile 787-599-3702<br>E-mail: pjrivera@pjrlex.com<br><br>*S/Pedro J. Rivera-Rivera*<br>**PEDRO J. RIVERA RIVERA** |

**COUNSEL FOR AYEICHA**:

**ALBERTO RIVERA-RAMOS, ESQ.**
*Attorney for* Ayeicha González-Castellanos
3001 Ave. Isla Verde
Plaza del Mar,  Apt. 305
Carolina, PR 00979
Tel. (787) 239-7988
Email: rivalberto@gmail.com


By: s/*Alberto Rivera-Ramos*
USDC PR No. 227502